### GREEN and others *against* SLAYTER and others.

A bill was filed, in *June,* 1809, against a *trustee* for an *account,* and also that he should convey to the plaintiff, the *cestui que trust,* so much of the trust estate as remained in his hands, &c., describing the same to be " *divers lands in Cosby's Manor,* in the patent of *Springfield,* and certain tracts or parcels of land in *Oriskany* patent;" and a *supplemental* bill was filed in *October,* 1809, praying

an injunction against the trustee from disposing of the trust property, and that a *receiver* be appointed, &c. In 1808, previous to filing the bills, the trustee, in his own individual name, sold and conveyed two lots of land in *Cosby's* Manor, to *S.*, who gave to him a bond and mortgage for the purchase money, without any knowledge of the trust. In *June*, 1811, *S.* paid off the bond and mortgage to *H.*, to whom the trustee had *assigned* the same, in *Nov.* 1810, and without any actual notice of the pendency of the suit against the trustees, or that the lots so purchased by him were part of the trust estate: *Held*, that *S.* was chargeable with notice of the pendency of the suit, and of all the facts stated in the bills filed against the trustee; and that the description of the trust lands, though general, was sufficient to put him on inquiry, and, therefore, good notice to him that the lots which he had so purchased, were part of the trust estate mentioned in the bills.

But although *S.*, as a debtor to the trust estate, was chargeable with such notice of the contents of the bills filed against the trustee; yet, as the trustee, by any thing contained in those bills, was not deprived of the power of receiving payment from and discharging the debtors, *S.* was not affected by the bills, and had a right to pay the amount due on the bond and mortgage, to the trustee, or to *H.*, the assignee, and legal owner of them; no *receiver* having then been appointed. Nothing but notice *in fact*, will, in such a case, prevent the debtor from paying the debt to the legal owner of the bond.

THE bill stated, that in *June*, 1809, the plaintiffs filed their bill against *Joseph Winter*, which bill, among other things, stated, that the defendant held in *trust*, for the plaintiff, *T. G.*, " divers lands in *Cosby's* Manor," and in the patent of *Springfield*, and " certain parts or parcels of land in the *Oriskany* patent." That the defendant, *J. W.*, had proceeded to sell " various parts and parcels of the land lying in *Cosby's* Manor," &c. That he had in his hands contracts for lands sold; and had in his possession bonds and mortgages belonging to the trust estate, &c. That the bill prayed for a fair account, &c. of the trust estate; that so much of the trust estate as had not been sold, might be conveyed to the plaintiff *T. G.*; and that a *receiver* might be appointed to dispose of the trust estate, &c. That a *supplemental*

1819.

GREEN
v.
SLAYTER.

*April 28th.*

1819.

GREEN
v.
SLAYTER.

bill between the same parties, filed *October* 14th, 1809, after stating the facts set forth in the original bill, charged the defendant, *J. W.*, with a fraudulent breach of his trust, in the sale and purchase of the *Oriskany*, &c. That the plaintiff, *T. G.*, was apprehensive that he might sell other parts of the trust estate, and assign the securities held by him in trust, unless restrained by an injunction. That lot No. 50, in *Cosby's* Manor, belonged to the trust estate, and that the defendant, *J. W.*, meditated purchasing it, under an execution issued at his instance, &c. That the plaintiffs prayed, that an injunction be issued, enjoining the defendant, *J. W.*, from selling or disposing of any of the lands and securities held by him in trust, and he be deemed to account, and that he be removed as a trustee, and a *receiver* be appointed; that an injunction was accordingly issued. That an *amended supplementary bill* was filed the 31st of *January*, 1810, containing some additional charges against the defendant, *J. W.*, praying an injunction for an account, and that a receiver be appointed, &c. (*Vide* S. C. vol. 1. p. 26—44.)

The bill in this suit further stated, that, in 1814, a decree was obtained in the suit above-mentioned, that *J. W.* should be removed from his trust, and the trust estates, with the securities, &c. should be conveyed and assigned to the plaintiffs, *Henry G.* and *Mary G.*, to be by them held for *Temperance G.*, &c. That this decree has been carried into effect, and, except as to the amount decreed to be due from *J. W.* to *T. G.*, exceeding 20,000 dollars, for moneys received by him, as trustee, and which he has not paid over, and represented himself as insolvent. That before the 3d of *November*, 1810, *J. W.*, pretending to act as trustee, sold to *David Slayter*, the defendant, small lots, No. 16 and No. 21, in *Cosby's* Manor, for 1,500 dollars, executed a deed, dated *April* 18, 1808, and received a mortgage to secure the sum of 1,130 dollars, payable in four annual instalments, with interest. That *J. W.*, fraudulently to appropriate the trust funds, on the 3d of *November*, 1810, sold and assigned the

mortgage, for 600 dollars, to the defendant, *Hunt*, who, as well as the defendant, *S.*, had notice of the claims of *T. G.* to the lands, and of the trust, and that *J. W.* had violated the same, and that *T. G.* had instituted the suit above mentioned against him. That the other defendants pretended some claim of interest in the mortgaged premises derived under the title of *S.* or his lessors; but that their interests, if any, were acquired with knowledge of the trust, &c. *Prayer*, that the defendant, *S.*, may be decreed to pay to the plaintiffs the money due on the mortgage, in *June*, 1809, with interest.

The defendant, *S.*, in his answer, denied all knowledge of the trust in *J. W.*, until *November*, 1811, before which time he had made full payment of the purchase money, and paid off the mortgage; that the money was paid at different times, the last payment being in *June*, 1811; that until *November*, 1811, he understood and believed that *J. W.* had purchased the premises, and held the same in his own right, &c.

That until *November*, 1811, he never heard of a suit in chancery, or injunction against *J. W.*, in behalf of *T. G.*; that he has been informed by counsel, and believes, that from the examination of the bill filed in that suit, it does not appear that the premises were a part of the trust estate, or that any complaint was made in relation to the premises, or any relief prayed as to them, or any complaint made of any abuse or misapplication of any bond or mortgage, &c., taken by *J. W.* for any of the trust estate sold by him, &c. Nor is there, in the bill, any prayer for relief, or for any injunction against the sale, collection, or assessment of any bonds or mortgages, but the whole scope and purpose of the bill is to prevent any further alienation of the real estate; and that *J. W.* might be decreed to account and to convey such of the *lands* as had not been sold, upon his receiving the balance, if any, due to him. That the defendant, *S.* contract

+ assignment

1819.

GREEN
v.
SLAYTER.

ed with *J. W.* in *September*, 1807, for the premises. That the deed, dated *April* 18, 1808, was executed by *J. W.*, in his private capacity, and contained full covenants of warranty. That he paid the two first instalments on the mortgage, before the 18th of *April*, 1809; that he paid the residue to *Hunt*, (to whom *J. W.* had assigned the bond and mortgage,) on the 21st of *June*, 1811, when the same were cancelled. That he believes that the said sum of 1,349 dollars was allowed to *T. G.*, in the report of the referees, against *Winter*.

*Gold*, for the plaintiffs.

*E. Clark*, for the defendants.

THE CHANCELLOR. The question is, whether the defendant, *Slayter*, be chargeable with notice of the bill, and supplementary bill, filed in 1809, by *Temperance Green and others* against *Joseph Winter*, and of the deeds referred to in those bills; and whether such notice, if any, rendered any payments made by him after that time, upon the bond and mortgage which he gave to *Winter* in 1808, void as against the plaintiffs.

There are two objections made to the application of the doctrine of the *lis pendens* to this case.

1. That it does not appear by those bills, in 1809, whether the lands sold to the defendant, and for which he gave his bond and mortgage, were part of the property held by *Winter* in trust.

2. Nor does it appear, that it was any part of the object or subject-matter of the suit, to obstruct or divert the payment of that bond.

1. The defendant has denied notice in fact of the suit in 1809, or that *Winter* acted as a trustee, or held, as trustee, the lands which he sold to him. He says, that the first actual notice which he had of the trust, or of the suit, was

after the payment and satisfaction of the bond and mortgage which he gave to *Winter*. If he made any payments in his own wrong, subsequent to the suit of 1809, it must be in consequence of notice in law, arising from the fact of the filing of the bills in that suit. Parties have, in several instances, been made chargeable in this Court with notice of the institution of that very suit, and with all the consequences of such notice. Thus, in the case of *Murray* v. *Ballou*, (1 *Johns. Ch.' Rep.* 566.) it appeared, that *Winter* had sold lands held by him in trust, to the defendant, in 1810, and the defendant was held chargeable with constructive notice of the suit in 1809, by *Temperance Green* against *Winter*, for a breach of trust, and to be responsible to the *cestui que trust* for the land or its value. The object of the bill in 1809, was to recall out of the hands of *Winter*, the lands then held in trust and unsold ; and under the supplementary bill he was enjoined from selling any more of those lands. It was assumed, in that case, as a conceded fact, that the lands sold to *Ballou* were part of the property held by *Winter* in trust, and that those lands formed part of the subject matter of the bill. On this point, there was no question raised or doubt suggested, and the decision rested on broad and plain grounds of law and fact. So, in *Murray* v. *Finster*, (2 *Johns. Ch. Rep.* 155.) the sale by *Winter* to the defendant was after the filing of the bill in 1809, and the payment by the defendant to *Winter*, was after notice in fact of the suit. This was a case of responsibility, founded on the doctrine of the *lis pendens*, which was clear of all difficulty. The same thing may be said of the case of *Heatley* v. *Finster*, (2 *Johns. Ch. Rep.* 158.) In *Murray* v. *Lylburn*, (2 *Johns. Ch. Rep.* 441.) the land was sold by *Winter*, in 1810, to *Sprague*, and the bond and mortgage, which were taken for the purchase money, were afterwards assigned by *Winter* to *Lylburn*. Here the doctrine was applied not merely to the purchase of the land, but to the purchaser of the securities taken upon such sale, and the

1819.

GREEN
v.
SLAYTER.

*cestui que trust* had his election given him to take either. The suit of 1809, by the supplementary bill, made all the securities arising from, or relating to, the trust, one of the subject matters in litigation, and *Winter* was enjoined not only from selling any more of the trust estate, but from selling or assigning any of the securities held in trust.

In none of those suits was it ever suggested, that the lands thereby affected did not appear, by the bills of 1809, to be trust property, or part of the matter in controversy. As the land in these cases was known and admitted to be trust property, and within the intention of the suit of 1809, the original bills were never made a subject of criticism, with a view to question or disturb that matter of fact. But the counsel have now raised a point not raised or discussed in the former suits ; and it is contended, that it does not appear by the original bill in 1809, or the supplementary, or amended supplementary bill, that the lots sold by *Winter* in 1808, to the defendant *Slayter*, or the bond and mortgage taken for the purchase money, were trust property, or any part of the subject matter of that suit. The defendant says in his answer, that when he purchased of *Winter*, he supposed he purchased of him in his own right. The purchase being prior to the suit of 1809, cannot be affected by it ; nor do the plaintiffs question the payments which were made by the defendant to *Winter* himself, prior to the suit of 1809. There is no colour of equity to question either the sale or those payments. The object of this suit, is only to recover so much of the purchase money as the defendant paid to *Winter's* assignee, *after* the commencement of the suit in 1809.

The lands sold to the defendant, were lots 16 and 21, in the subdivision of great lots No. 83, 84, and 85, in *Cosby's* Manor, and the bill of 1809 alludes, or refers, to several tracts of land in different places and counties, and among other parcels, it mentions " divers lands in *Cosby's* Manor," which had been purchased by *William Green*, and mortga-

ged to *Heatly*, and that the mortgage was registered in the counties where the lands lay. The bill then states, that all those lands were conveyed by *Green* to *Winter*, in trust, and that *Winter* had proceeded to sell " various parts and parcels of the land lying in *Cosby's* Manor," as well as lands lying elsewhere. The supplementary bill goes further, and mentions lot No. 50 in *Cosby's* Manor as belonging to the trust estate; and this is all the specification of the trust lands in *Cosby's* Manor given by the bill. If we examine the registry of the mortgage given to *Heatly*, and which registry was referred to in the bill, we find that it only mentions " certain tracts, parcels, or lots of land in *Cosby's* Manor containing 7,200 acres ;" and it refers, for the particular description and boundaries of that land, to a deed from the executors of *John M. Scott*, of the 25th of *December*, 1792. This mortgage left the lands intended in as much uncertainty as they were left by the bill, and the question recurs, whether by a bill so general in its reference to the lands in trust, the defendant ought to be charged with notice, at the time he paid off the bond and mortgage, that the lots he bought of *Winter* were part of the lands in *Cosby's* Manor held in trust by *Winter*.

The argument in favour of the defendant is, that the doctrine of notice arising from the filing of the bill, is sufficiently severe, and it is reasonable that a plaintiff who means to affect all persons with notice of the subject matter in controversy, and to prevent them from intermeddling with his right, should be obliged to state that subject or right with a certainty and precision not to be mistaken. That in this case the absolute certainty required and pointed out by the references in the bill, was to be found only in private conveyances not averred to be upon record, and to which a stranger had no legal right to demand access. On the other hand, it may be observed that when the defendant discharged his bond and mortgage in the hands of *Winter's* assignee, he was told by the bill, that " divers lands in

1819.

GREEN
v.
SLAYTER.

Cosby's manor," were held in trust by *Winter*, and which had been purchased by him of *Green*; and that he had been selling "various parts and parcels of those lands." It is true that there might have been "divers lands in *Cosby's* manor," held in trust by *Winter*, and yet the lots he sold to the defendant have been held by him in his own absolute right. But though this was a possible, it was an improbable fact; and if ever a bill contained a sufficient matter to have put a party upon inquiry, the bill, in 1809, answered that purpose. The doctrine of the *lis pendens* is indispensable to right and justice, in the cases and under the limitations in which it has been applied ; and, according to the observation of Lord Chancellor *Manners*, *we must not suffer the rule to be frittered away by exceptions*. Was it too much to have required of a purchaser charged with notice of all the facts in the bill of 1809, to have called upon *Winter* to disclose the source of his title? The general rule of this court is, that what is sufficient to put the party upon inquiry, is good notice in equity. (Lord *Hardwicke*, in *Smith* v. *Low*, 1 *Atk*. 489.) The least inquiry, even of *Winter* himself, would have satisfied the purchaser, that the lots he purchased were parcel of the trust lands mentioned in the bill. That such was the fact, is admitted by the answer ; and the real objection of the party is not to the application of the rule to this particular case, but to the justice and equity of the rule itself. It is, therefore, entirely inadmissible.

2. But admitting the defendant to be charged, at the time he paid the bond, with notice, as a debtor to the trust estate, of the contents of the original and supplementary bills, the next question is, did that notice create any just obstacle to his payment of the bond? The object of the original bill was to compel *Winter* to account, and to recall out of his hands the trust lands remaining unsold. The supplementary bill went further, and prayed that *Winter* might be restrained from assigning the securities held in trust, and that they might be delivered up to the receiver who should be

appointed. If the payment of the bond to *Hunt*, the assignee, was made by the defendant, in his own wrong, it must have been in consequence of the notice contained in this supplementary bill; but it appears to me that the defendant was not affected by either of these bills. Though *Winter* was prohibited from assigning the securities, he was not, until the appointment of a receiver, prohibited from collecting the debts and rents due the trust estate; and great inconvenience and mischief might ensue, from denying him that power, by mere inference from the bill, and before the appointment of a receiver. I am not for carrying the doctrine of the *lis pendens* to the length of not only raising a notice by construction sufficient to charge a party, but of also extending the objects of the bill by construction, in order to support the notice. The validity of the sale, or of the payments to *Winter*, in this case, was not a point raised by the bill for litigation, and the case does not fall within the reason and equity of the rule. His inability to receive payment, and discharge the debtor, must have been the consequence of some subsequent and direct act of the court, or of the appointment of a receiver duly made known to the debtors. Nothing of this kind appears in the case, and the defendant was not, therefore, in the mean time, deprived of his right to pay to the legal owner of the bond.

If a payment to *Winter* would have been good, when nothing more existed to prevent it than the filing of these bills, a payment to his order or assignee, must have been equally so. The debtor had nothing to do with the breach of the injunction by *Winter*, by the assignment of his bond and mortgage to *Hunt*, nor with the effect of the suit upon the right of *Hunt* to take such an assignment. The latter might be responsible to the plaintiffs for the money so received, and yet the payment on the part of the defendant be good; because the constructive notice, arising upon the supplementary bill, was addressed to the assignee, not to the debtor. If the rule was extended further, the debtors would

1819.

GREEN
v.
SLAYTER.

be deprived of the opportunity of discharging their debts, and relieving themselves and the land from that incumbrance. There would be no person to whom they could pay. When a receiver was appointed, then the powers of the trustee were completely suspended; and when notice of that appointment was duly given, then any subsequent payment by the debtor to the trustee would be at his peril; but until that event, the debtor had a right to resort to the legal owner of his bond, and discharge it. The debtor, in a case like this, ought to have had notice in fact.

I am, accordingly, of opinion, that the plaintiffs have no right, in equity, to compel the defendant, *Slayter*, to the repayment of any part of the bond, and that the bill, as to him, be dismissed, with costs.

Bill dismissed.