## LODGE *against* SIMONTON.

Whatever puts a party upon inquiry amounts to notice, provided that inquiry became a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

APPEAL from the Circuit Court of *Northumberland* county, held by *Gibson, Chief Justice.*

This was an action of ejectment, in which the heirs of *Jonathan Lodge,* deceased, were plaintiffs and *Robert Simonton,* was defendant.

Previously to 1770, *Samuel Hunter* and *Jonathan Lodge,* were the owners of three applications for three hundred acres each, in the names of *Hunter, Spencer* and *Popjay.*  In that year surveys were made upon these applications, and afterwards re-surveys were made, and the location of one or all of them changed, so as that a body of land of twelve hundred acres, was included within the surveys. This it appeared was done for the purpose of preventing the location of any other application or warrant upon any part of these twelve hundred acres, so that *Hunter* and *Lodge* might appropriate the whole to themselves.  In 1773, they obtained a warrant in the name of *Gailey* for three hundred acres, which was executed in the same year by *Charles Lukens,* and located within the bounds of the twelve hundred acres.    Another survey was made upon this warrant in 1790 which located it upon a different tract of land, but still within the twelve hundred acres.    This survey was made by *Samuel Hunter's* executors.

(Lodge *v.* Simonton.)

The following diagram exhibits the whole four tracts, and how they were appropriated at different times:

There was nothing upon the title papers, which shewed that *Lodge* had any interest in these lands. In his life-time, *Hunter* gave tract marked No. 1, to his nephew *William Wilson*, who procured it to be re-surveyed as the *Spencer* tract in 1787, had it patented and sold it to *Simonton* the defendant. No. 2. *Hunter* also sold in his life-time, to the corporation, "for the relief of Presbyterian Clergymen." No. 3, *Hunter* and *Lodge*, sold to *Dougherty* in 1774. In 1784, *Samuel Hunter* died, having first made his last will and testament in the same year, which contained this clause.

"And I do hereby order and direct that the plantation and tract sold by Mr. *Jonathan Lodge* and myself to *George Dougherty*, that the remainder of the moneys due to me, arising from that sale, be appropriated by my executors to, and for, the payment of my just debts, my share thereof amounting to one hundred pounds after deducting the moneys necessary for patenting the same: and I do further order and direct, that the plantation and tract of land in *Turbut* township, near to Mr. *Hewett's*, taken up by Mr. *Lodge*

(Lodge *v.* Simonton.)

and myself, to be sold by my executors, and the sum of £24 15. paid by me for warranting the said tract, is to be refunded and paid by Mr. *Lodge* or his executors, before he can, or may be entitled to any share or purpart thereof. And as to the residue of my estate, both real and personal, I hereby give, devise and bequeath the same to my beloved wife *Susannah,* and my two daughters *Nancy* and *Polly,* and to their heirs and assigns forever, as tenants in common.''•

*Hunter's* executors did not sell the tract of land ''in *Turbut* township, near to Mr. *Hewett's,* &c.'' as directed by the will, but the residuary devisees, sold the same to *Robert Simonton,* the defendant, in 1810. There was nothing in the evidence, which shewed that *Simonton* had notice of the sales of tracts No. 2 and 3, having been made by *Hunter* in his life-time. There was a great deal of complicated evidence in the cause, but the foregoing statement of facts, will sufficiently explain the only important question which arose, and was decided by the court. Whether or not the will of *Samuel Hunter,* under which *Simonton* claimed, and the other circumstances of the case, were notice to him of *Lodge's* title to one-half of the land in dispute? His honor being of opinion, that it was, so instructed the jury; who found a verdict accordingly for the plaintiffs. The defendants appealed.

*S. Hepburn* and *Bellas* for appellants.

The opinion of the Supreme Court, heretofore delivered by *Justice Duncan,* [*] does not settle the question of notice, unless the jury should first find the fact that, the will refers to *this* tract of land; if it did not, it gave no notice. Upon the three applications,

---

[*] THOMAS YOUNG *et al.* in error, } Writ of error to the Common Pleas of
*v.* } *Northumberland* county—present, all the
ROBERT SIMONTON and other. } judges.

DUNCAN, J.—Delivered the opinion of the court.

Plaintiffs and defendants claim, under a warrant to *James Gailey* of 24th September, 1773. It would appear that this warrant was taken out, and paid for, by *Samuel Hunter,* who obtained a deed-poll from *Gailey.* The legal title is deduced from *Samuel Hunter,* to the defendants who hold the patent; and if they are purchasers without notice, hold it discharged of any alleged trust. But the plaintiffs, the heirs of one *Jonathan Lodge,* pretend that the land was taken up for *Samuel Hunter* and *Jonathan Lodge;* and that the defendants purchased, with notice of that fact, or at least, with the means of notice, by the medium of the title, under which they claim. *Samuel Hunter* being seized of the legal title, in 1784, by a codicil to his will, devises as follow, (here his honour read the clause on which the question turns ) On the 14th of May, 1810, *Alexander Hunter,* and *Mary* his wife, and *Mary Scott,* the children of *Samuel Hunter,* and his widow, grant the land (prout the deed) to *Robert Simonton* one of the defendants. The only point respects the recognition of the right of *Jonathan Lodge,* by the codicil to *Samuel Hunter's* will. As to that, the court instructed the jury, that there does not appear any thing, in the will of *Sam-*

(Lodge *v.* Simonton.)

without the payment of purchase money, and contrary to law, four tracts were surveyed. If, therefore, Colonel *Hunter* clouded the truth, so as that what tract he referred to in his will, was uncertain,

---

uel *Hunter,* that could affect *Robert Simonton* or any claiming under him, with legal notice of any claim of *Jonathan Lodge,* for that it would appear that *Lodge* was entitled to the proceeds of some land, but not the land itself.

Whether or not the clause in the codicil, directing that the plantation and tract of land in *Turbut* township, near to Mr. *Hewett's,* taken up by Mr. *Lodge* and himself, should be sold by his executors, and the sum of £24 15 paid by him for warranting the said tract, to be refunded, and paid by Mr. *Lodge,* or his executors, before he could or might be entitled to any share or purpart thereof, *applied to the tract in dispute, was a matter of fact, to be decided by the jury.* If they found it to apply, its operation as notice, was matter of law. This clause acknowledges the right of *Lodge.* · It states that the land was taken up by *Lodge* and *Hunter;* that the tract lay in *Turbut* township, and near to Mr. *Hewett's* as this tract does; and on the purchase money being refunded by *Lodge,* or his executors, recognizes his right to a share or purpart of it. *It was notice of a trust.* The conveyance, though the grantors describe themselves as heirs at law, yet states the will and the devise of the tract in dispute, to his widow and heirs at law, and refers specially to the will: "as in and by his will duly proved, and remaining in the register's office at *Sunbury,* recourse being thereunto had appears." The title to *Simonton* is under the will. The grantors did not claim as heirs at law. The widow *Sarah* could not be heir at law of her husband the testator. They did not claim the estate as one descending on them. There was no intestacy, and they did not take under the will as heirs, but the widow and the children, under the residuary devise, take as tenants in common. They take by purchase, because they take a different estate, or at least different portions of the estate, from that which would have descended to them. · The widow takes not by descent; the children take not by descent, for they take only two thirds. By descent, they would have taken the whole. At any rate the conveyance, by the recital of the will and the devise, and by a direct reference to the will as the source from which the grantors declare they derive their right, *was sufficient* *to put the vendee on an inquiry;* and in all cases, where a purchaser cannot make out a title, but by a deed, which leads him to another fact, whether by description of the parties, recital, or otherwise, he will be deemed cognizant thereof; for it was *crassa negligentia,* that he sought not for it. And for the same reason, he is bound, by the whole of its contents. *Sugd. Vend.* 499 566. The will had given notice of the trusts, and the purchaser was bound to take notice what the trust was. The *lessee* of *Willis* v. *Bucher,* 2 *Binney,* 499, establishes this doctrine of notice, in its fullest extent. · It was there decided, that the purchaser, under a patent, is bound to take notice of a will, recited in a patent, and is affected with notice of what appears on the title, unless it is contrary to the patent. The patent showed the devise to be in fee-simple. The will only gave an estate tail. The judge who delivered the opinion of the court, observed that the will was recorded, and it was the fault of the purchaser, not to examine it. The court below, in the case at bar, though they stated the law accurately, as to the effect of notice, yet when they instructed the jury, as to the notice afforded by the codicil to the purchaser, they fell into error. For they said that there does not appear any thing in the will, which could affect *Robert Simonton,* or any one holding under him, with legal notice of any claim of *Jonathan Lodge to the land;* and they assigned this reason for their opinion—that it would appear that *Lodge* was entitled to a share of the proceeds of some land, but not to the land itself. Now it is evident that the right of *Lodge* to a share or purpart of the land itself, was recognized by the testator. This right is founded on their having taken up the land together. One of the usual terms on which land is taken up in partnership, is an equality of division by a line between the discoverer and the person who pays the purchase money and takes out the warrant—a condition adopted by *Hunter* and *Lodge.*

(Lodge *v.* Simonton.)

it was *so* uncertain, and made so by himself, that it would not be notice to *Simonton,* who is therefore an innocent purchaser, without notice. When the will was made, undoubtedly the *Gailey* warrant was not laid upon the land now in. dispute; suppose, then, the warrant, and in addition thereto the survey upon it, were recited in full by the will, and *Simonton* had procured from the office copies of them, and laid them before him; would he not have found that they had no reference to the land in dispute? And would not any lawyer have advised him that he might safely buy?

The law being that constructive notice must be explicit, clear and certain, *Heister* v.*Fortner,* 2 *Bin.* 40. *Billington* v. *Welsh,* 6 *Bin.* 129, how can the will of *Samuel Hunter* be construed to be notice to *Simonton.* But it is said, it was designated as adjoining *Hewett's;* so did another of the four tracts; on which side of *Hewett's* did it lie? for two tracts adjoining *Hewett's* may be miles apart. It is said, that the fact is, that *Hunter, in his lifetime,* had sold the other three tracts; and therefore the will could refer to none but the land in dispute. Is this argument sound? How was *Simonton* to know that he had sold the other three tracts? Was he to run through the county to hunt up notice? Were the deeds upon record? Where was he to go? In fact, it appeared on the trial, that Colonel *Hunter,* had given one of them to his nephew, for which he had not made him a deed at all. Is this the clear, certain, explicit notice which the law of the cases cited requires?

As between themselves, they may call their survey what they please, and call white-acre black-acre, and black-acre white-acre, so long as it affects no one but themselves; but when one of the co-tenants sells his interest, and a third person comes in, either the one co-tenant or the other may suffer the evil consequence of the confusion created by them; but it shall not be visited upon the innocent purchaser.

*Donnel* and *Greenough* for appellees.

*Hunter* and *Lodge,* being the owners of three applications and surveys, and subsequently, of a warrant and survey, it was a matter of no importance to any one, nor is it an important fact to any ques-

---

If *Hunter* and *Lodge* were interested in *Gailey's* warrant and in the lands located on it, *then the codicil gives notice of their interests, if from the description of the tract as stated in the will, the jury should find it referred to that tract.* But the jury were. informed that let it apply or not apply, the codicil did not give notice of an interest in the land itself, but only in the proceeds—a construction clearly erroneous; *for whatever the interest of Lodge might be, having notice sufficient to put him on an inquiry, or notice of the trust, he was bound to take notice what the trust was.*

Judgment reversed and a *venire de novo* awarded.

(Lodge *v.* Simonton.)

tion of law, which arises in this case. That they shifted them as to name and location; that they called *Spencer Hunter* and *Hunter Gailey,* and *Gailey. Popjay:* they were tenants-in-common, of the whole. As to *Simonton* this circumstance could have created no confusion; for at the time of *Hunter's* death, he had disposed of three of the tracts, and had but one left, and one of the three *Simonton* himself had purchased. The deed from the devisees of *Hunter* to *Simonton* recited the will, and that will gave explicit notice, that *Lodge* was half owner of the land in dispute. The will designates the land as *warranted,* and adjoining *Hewett's;* and under this very *Gailey* warrant, which was the only warrant ever Colonel *Hunter* owned, *Simonton* procured the land in dispute to be patented. Add to this, that Colonel *Hunter* owned no other tract of land at the time of his death, and what notice could be more certain, than that which the will gave. At all events, was it not all that the law requires,—that which should put a prudent man upon inquiry as to the title?

Ross, J.—In this case, the third and fourth reasons assigned for a new trial, will only be considered at this time by the court. The following is the provision in the codicil to the will of *Samuel Hunter,* upon which depends the decision of these exceptions:

"I do hereby order and direct, that the plantation and tract sold by *Jonathan Lodge* and myself, to *George Dougherty,* that the remainder of the moneys due to me arising from that sale, be appropriated by my executors to and for the payment of my just debts, my share thereof amounting to one hundred pounds, after deducting the moneys necessary for patenting the same. And I do further order and direct, that the plantation and tract of land in *Turbut* township, near to Mr. *Hewett's,* taken up by Mr. *Lodge* and myself, be sold by my executors, and the sum of £24 15. paid by me for warranting the said tract, is to be refunded and paid by Mr. *Lodge* or his executors, before he can or may be entitled to any share or purpart thereof."

This codicil is dated the 29th of March, 1784. I cannot perceive in what respect the provision in this codicil, has any application to the land in controversy, or how it can be considered descriptive of it, so as to amount to a constructive notice to *Simonton* and others. It is certainly not such a description, as, if contained in a warrant, would locate itself. Would it then, if in a warrant or location, be constructive notice to a subsequent warrantee? The will describes it as a plantation and tract of land in *Turbut* township, near to *Hewett's.* But how near to *Hewett's?* Was it near to *Hewett's* on the north, south, east or west? Again, "it was taken up by *Lodge* and myself." According to the evidence, there were three other tracts in the immediate vicinity, or adjacent thereto, taken up

by *Hunter* and *Lodge,* to which the same description would have been equally appropriate.  But further, the will says, "it was a tract for which *Hunter* had paid "for warranting £24, 15." This however, was to be refunded by *Lodge,* or his executors, before he could be entitled to any share or purpart thereof.  It appears to me, there is nothing in this codicil, from which notice to *Simonton,* that *Lodge* had an interest in the particular land in dispute, can be fairly inferred.  A history of the transactions respecting this land, as collected from the evidence and admissions of the parties, relieves, I think, the point from all doubt.

From this it will appear, that by the shifting of the surveys, and the transposition of the names of those, making the location, to tracts, different from what they called for by the first set of surveys, all was not honest and fair, but that the intention was to render the appropriations and surveys so confused, as to place it beyond the power of any *bona fide* settler to ascertain, whether any, and if any, what part of the tract of 1200 acres had not been surveyed by proper authority, and remained unappropriated.  And in this they succeeded.  It was a fraudulent attempt to exclude all others from the exercise of a legitimate right, to prevent the improvement of the country, and appropriate to themselves that which did not belong to them.  To sanction such conduct, would be contrary to the soundest principles of morality, and would aid the efforts of unfair practices.

I am unable to find any thing in the whole transaction, that would make the codicil in the will notice to *Simonton,* that one-half of the tract in question, was owned by *Lodge.*  There is a difficulty in defining with any degree of precision the rules, which govern implied or constructive notice.  No general rule can be laid down, equally applicable to every case, but it must be regulated in a great measure by the circumstances of the particular case.  The doctrine, however, generally adopted, is, that whatever puts a party upon inquiry, amounts in judgment of law, to notice, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence, and understanding.  4 *Kent's. Com.* 172.  In *Heister* v. *Fortner,* 2 *Binn.* 40, it has been held, that the registry of a deed, defectively proved or acknowledged, is not constructive notice to a subsequent purchaser, although the registry be made in the proper county.  There could not be a case affording a much stronger implication of actual notice, than a deed thus recorded.  Still it was decided not to amount to constructive notice.  So also in 20 *Johns. Rep.* 659, a *deposit* of deeds and conveyances, pursuant to an act passed "to the end that persons inclining to have recourse thereto, might inspect the same," was decided not to amount to *legal notice,* to

(Lodge *v.* Simonton.)

subsequent purchasers. See also 5 *Binn.* 129, *Billington v. Welsh.* In *James* v. *Morey*, 2 *Cowen*, it has been held, that the registering a deed of conveyance, is not notice to a subsequent purchaser, except in cases where its registry is made necessary by statute— thus for example, registering a sheriff's deed would not be notice in that state. So also in the same case, it was decided, that the recording an assignment of a mortgage, is no notice to a mortgagor, so as to render payments by him to the mortgagor, in his own wrong—because, the recording an assignment is not within any of the general registry acts. 2 *Cowen*, 246. It is not my intention to enter into an examination of the numerous cases that are to be found in the books on the subject of notice. *Justice Duncan*, in delivering the opinion of this court in *Peebles* v. *Reading*, 8 *Serg. & Rawle*, 496, has gone fully into the question, and pointed out the various kinds of notice, and the difference between them. He says, "that the true ground in all cases for determining the question of notice, is, that in itself it is a species of fraud, and takes away the *bona fides* of the purchaser, and puts him in *mala fide.*" See also 2 *Equity Cases*, 682. 1 *Wash.* 4.

It seems clear, that there is nothing in the case before us, that can amount to notice, when tested by the principles established in the cases just cited. In the controversy, to such a state of inextricable confusion, was the whole transaction reduced by *Lodge* and *Hunter*, that no man, not even *John Spencer*, could say which tract was legally appropriated. For on the 26th of January, 1785, a patent was granted to *William Wilson*, for 327¼ acres, the premises in question, which had been conveyed to him by a deed-poll from *John Spencer*. But in 1787, a re-survey was made by order of the board of property, at the instance of *William Wilson*, by which *Spencer's* survey was removed to No. 1, where it had been originally laid out, and a patent was granted to *Wilson* for that. The fact, that *Spencer*, himself, could not tell the original situation of his survey, or which tract had been appropriated, is ample evidence that there is nothing in the will of *Hunter*, which was then proved, that could by ordinary diligence and understanding, lead to the discovery of the lot that was designated, or intended to be designated thereby. There is nothing in the whole transaction, "that takes away the *bona fides* of *Simonton*, the purchaser, and puts him in *mala fide.*"

Are not *bona fide* purchasers for a valuable consideration, without notice, entitled to protection against secret trusts? and is not *Simonton* such a purchaser? The heirs of *Lodge* certainly are not such. But if they are to be considered in the light of purchasers, for a valuable consideration—if both plaintiffs and defendants have their equities, may not the equity of the one, be greater than the

(Lodge *v.* Simonton.)

equity of the other?     And is it not a familiar principle, one equally consonant to common honesty and common sense, that he, who has the greater equity, must be preferred to him, who has the lesser.     It cannot be pretended, that the heirs of *Lodge* have a greater equity than their father would have had, if living.     What then was his equity?     The warrants were taken out, and surveyed in the names of *Hunter*, by *Lodge's* consent.     He authorized *Hunter* to sell the land, or to dispose of any equity he had in it: and after a deduction, *Lodge* was to receive one half of the purchase money.     This appears by the very evidence, which the plaintiff produces from *Hunter's* will, to prove constructive notice.     But did his lien continue on the land for his share of the purchase money? His suffering the warrants and surveys to remain in the name of *Hunter*, as the real owner of the land, with an understanding, that he should sell the same; and at the same time, rendering the appropriations uncertain and confused, was acting *mala fide* towards the proprietary, and persons desirous of making appropriations, according to the customs and usage of the land office.     If *Lodge* did authorize *Hunter* to sell, would he have any more lien for the purchase money, than *Hunter* himself: and certainly *Hunter* had none; though he had a legal estate, which could only be divested by legal conveyances.     Whereas, *Lodge* had, at most, only an equitable one, which might be lost by abandonment, or relinquished by acts inconsistent with any assertion of an equitable title.

In *Lewis* v. *Madisons*, 1 *Munford*, 303, it was decided that the rule that a purchaser is bound by notice, does not apply to a lien claimed under a written contract, so vague and indefinite as not to designate, with any certainty, the specific land in question.     In this case, the description of the land, (if description it can be called,) contained in the will, is certainly too vague and indefinite to designate, with any certainty, the specific land in question, and therefore cannot be notice to affect the defendant in any manner.

*Simonton* has the legal title.     Upon what principle can it be contended, that he holds one hal in trust, for the plaintiffs?     He is not a trustee, by the express provision of either any written or unwritten contract.     The plaintiff's case is not a resulting trust. If the defendant is a trustee for the plaintiff, for one half of the land, it must "spring from circumstances attending the transaction; as accident, mistake, or fraud, which of themselves, form actual ground of *Chancery's* interference—inducing it to imply a trust, from what it ascertains to be the conscientious duty of a party: and thereupon, in accordance with its general principles, to compel the performance of that, which rational justice demands." *Jeremy's Equi. Jur.* 94.     In this case, there is no allegation of accident, mistake, or fraud, and therefore, the plaintiffs have no claim ari-

57

(Lodge v. Simonton.)

sing under these principles.    I am clearly of opinion, that relief could only be granted on account of fraud; and that fraud, consisting of a purchase with notice of the trust, must be made out, by clear proof of what would amount to actual notice.    It should not be a mere rumour or knowledge, but a notice susceptible of positive proof, or what is the same thing, a precise and definite recital in some of the deeds, under which the defendant deduces title, of the trust.    The interest of the trustee, and the property subject to the trust, should be designated, with such certainty, as to be easily applied to the land, held or alleged to be held under it.    I am opposed to extending the doctrine of constructive notice, particularly against a *bona fide* purchaser, for a valuable consideration.    A clear case should be made out, and parol evidence received, with the greatest caution.    In the case before us, the jury should have been so instructed.    The evidence did not warrant the charge, that *Simonton* had constructive notice, through the will of *Hunter*, of the interest of *Lodge's* heirs in the land.    The court were correct in saying, "that in the will, no particular tract is referred to," and should have added, therefore, too vague and uncertain to be notice, to a purchaser of any tract.    We are, therefore, of opinion that a new trial should be awarded.

Gibson, C. J.—Decisions on the effect of defectively registered conveyances, deposit of title papers, and most of the others that have been adduced, shed but little light on the subject before us, which belongs to another branch of the law of constructive notice. The only apposite rule in the books is, That a purchaser shall be affected whenever there was enough to lead a vigilant mind to a knowledge of the truth; and consequently, that he should be presumed to have known every thing of which any part of his title afforded an intimation; for not to follow the truth, when put upon the scent of it, is undoubtedly gross negligence.    And this I take to be the rule in Pennsylvania, as well as elsewhere; for that a loss incurred from ignorance, shall be borne by him who had reason to suspect, and yet refused to investigate, rather than by one who is chargeable with no want of vigilance whatever, is consistent, not only with precedent, but the immutable principles of reason and justice.    Nothing can be more vague and imperfect than the information afforded by the equivocal fact of possession; yet it is held, that the naked possession of one who has purchased the estate, *even though he entered as a tenant*, is constructive notice of his equitable title as a purchaser.    *Sugd. Vend.*, 744.    Why should the rule be different in regard to circumstances that serve to identify the subject-matter of the conveyance?    If it is meant to be asserted in

(Lodge *v.* Simonton.)

the opinion just delivered, that no description may be sufficient to point the attention of a subsequent purchaser, but such as, if used in a warrant, would dispense with a survey, or, as it is said, make the warrant locate itself, I have only to say that the doctrine is new to me. Very different was the notion of Chancellor *Kent* in *Green* v. *Slayter*, 4 *Johns. Ch.* 45, 46, who, so far from requiring absolute, or even convenient certainty, charged a purchaser, on the principle of *lis pendens*, with constructive notice of the trust, where the property was described in a bill in equity, as "divers lands in *Crosby's* manor;" a description certainly much less specific than the one in the codicil before us. The argument there, was as it is here, that there was nothing in the description which pointed directly to the land. "It is true," replied the Chancellor, that there might have been divers lands in *Crosby's* manor, held in trust by *Winter*, (the vendor,) and yet the lots he sold to the defendant have been held by him in his own absolute right. But though this was possible, it was an improbable fact; and if ever a bill contained sufficient matter to have put a party on inquiry, the bill of 1809 answered that purpose. The doctrine of *lis pendens* is indispensible to right and justice in the cases, and under the limitations, in which it has been applied; and according to the observation of Lord *Manners*, we must not suffer the rule to be frittered away by exceptions. Was it too much to have required of a purchaser charged with notice of all the facts in the bill of 1809, *to have called on Winter to disclose the source of his title?* The general rule of this court is, that whatever is sufficient to put the party on an inquiry, is good notice in equity. *Lord Hardwicke in Smith v. Low*, 1 *Atk.*, 489. The least inquiry, even of *Winter* himself, would have satisfied the purchaser that the lots he purchased, were parcel of the trust lands mentioned in the bill." Was not the necessity of such an inquiry equally obvious and equally imperative in the case before us? I am relieved from the task of weighing the authority of Chancellor *Kent* in the preceding case, against that of the court in *Lewis* v. *Madisons*, 1 *Munf.*, 303, as there is no essential discrepance between the two cases. In the latter, the contract had not only no apparent, but no actual connection with the land in dispute; and the generality of the expressions used in regard to it, is to be qualified by the consideration that they were predicated in relation to the particular circumstances of the case. The description was of "land willed" to the party contracting, when in fact no land had been willed to him, so that an inquiry by a purchaser would have led to nothing, even had the words embraced, as some of the judges seemed to think they did, land expected to be willed to him; and a majority put the case expressly on the ground that an inquiry would have been fruitless. How different in that respect is the

case at bar. A glance at its circumstances will show that an appli-
cation of the warrant to any other than the tract in dispute, was,
in the words of Chancellor *Kent,* if possible, a very improbable
fact. It was more—it was absolutely impossible. The defendants
are compelled to resort to *Hunter's* will. If they discard that,
they disclaim his title; for it was determined, when the cause was
here before, and on ground not to be shaken, that the persons from
whom *Simonton* purchased, had not the land by descent, but as
residuary devisees. *Simonton* was therefore bound to inspect the
codicil with the will; and what does it contain? It contains an ex-
plicit declaration that "the plantation and tract of land, *in Turbut
township,* NEAR TO MR. HEWITTS, was the joint property of him-
self and *Lodge.*" Now I should suppose it enough to put a pur-
chaser on an inquiry, that the land is described to be in a particu-
lar township, and near a particular occupant, though it be not spe-
cified whether it be near him on the north, the south, the east, or
the west; and even though the party had *other lands in the same*
township, that equally answered the description, *which, however,
it will be shown, was not the case here.* It is precisely in such
a case that an inquiry into particulars not before mentioned, becomes
proper to remove the possibility of misapprehension by distinguish-
ing with perfect certainty the subject-matter of the contract. But
it is a most important, and, as it appears to me, a decisive feature
of the case, that this was, not merely the only tract which actually
adjoined *Hewitt,* but, as I have already intimated, *the only one
owned or possessed by the testator at the date of the codicil,
which answered the description in any one point or particular;*
for the other three tracts, in the names of *Hunter, Spencer* and
*Popjay,* had been sold by him years before, and it would have
been impossible for any purchaser, let the peculiarity of his appre-
hension or power of combination be what it may, to imagine that
the testator was speaking of any of them, when he was directing
the particular tract to be sold by his executors. Whatever ambigu-
ity there might have been in the declaration of the testator, if made
in relation to the state of things that originally existed, or if he
had continued to hold all the tracts, there is none at all, when it is
considered that he had but one tract at the time to which it could be
applied, and that he does not appear to have had another inch of
land within the township. That this is the tract in dispute, is not
controverted, for it is agreed that he had no other at the date of the
codicil, to which it could be applied. He and *Lodge* had surveyed
1200 acres on three locations, of 300 acres each, in the names of
*Hunter, Spencer* and *Popjay,* which had been occasionally shift-
ed from tract to tract, in order to cover the whole, and protect the
excess, beyond what they could lawfully hold on these rights, from

(Lodge *v.* Simonton.

appropriation by other applicants. The unfairness of this manage. ment, has a tendency to prejudice the judgment against the plaintiff's right; and it is therefore not surprising that the defendants have had the benefit of considerations that could be legitimately urged only in favor of a title adverse to that of *Hunter* and *Lodge*. But however fraudulent their conduct may have been in relation to the public, it must be obvious that it affords no ground of defence in an action between themselves, or persons standing in their respective places; and it is to be held in remembrance that the very question here is, whether *Simonton* is not to be treated as standing in *Hunter's* place. The shifting of these locations, then, is to be treated as inoperative, further than that as it may have served to enable *Hunter's* devisees to conceal *Lodge's* right. The *Gailey* warrant was at last procured to cover the residue of the land, but surveyed on what is called the *Hunter* tract, which is not the one in dispute; and hence the point of defence made at the bar; that *Hunter's* admission of *Lodge's* right, being made in reference to a title by *warrant,* may possibly have been understood by *Simonton,* as predicated of *the tract originally surveyed on the Gailey warrant:* in other words, that as the codicil referred to a warrant originally laid on a tract appropriated to the *Hunter* location, the admission may have been understood as made in reference to that tract. To say nothing, at present, of the undisputed fact that this tract had been sold by the testator himself, perhaps some ten years before, to the corporation, for the relief of poor and distressed Presbyterian clergymen, I shall, for the sake of the argument, admit the possibility of such a misapprehension, and then ask whether it could be founded on facts and circumstances so unambiguous and leading to it so irresistibly, as to have silenced all suggestions of the propriety of further examination. In the first place, the misapprehension must have been founded on the gratuitous assumption that the *Gailey* warrant was particularly alluded to. No expression in the codicil authorizes such a conclusion; yet it is the foundation of the hypothesis. The clause is in these words: "And I do further order and direct, that the *plantation* and *tract of land in Turbut township, near Mr. Hewitt's,* taken up by Mr. *Lodge* and myself, be sold by my executors; and the sum of £24.15, paid by me for *warranting* the said tract, is to be refunded or paid by Mr. *Lodge,* before he can or may be entitled to any share or purpart thereof." It will be perceived that the argument is, that *Simonton* may have taken the admission of *Lodge's* title to refer to the *Gailey* warrant, and through it, to the *Hunter* tract on which it had been laid. A sufficient answer might be found in the fact that the other parts of the description are altogether inconsistent with that supposition, as that tract was the very furthermost one from *Hewitt,*

(Lodge *v.* Simonton )

instead of being near him. But there is nothing in the clause to indicate the *Gailey* warrant in particular, the description being not of a warrant, but a tract of land designated by its situation in regard to a particular owner, the species of the title being mentioned incidentally, and for a different purpose. There was no pretext, then, for an assumption that a tract was meant different from that which was otherwise described. But granting that *Simonton* may have had reason to suspect, what happens to be true in fact, that the *Gailey* warrant was actually meant, yet the supposed cause of his imputed misapprehensions as to the particular *tract* to which it was applicable, depended entirely on extrinsic circumstances; and if these may enter into the case to give color to the existence of a mistake, they are proper to be used in order to repel it. Now if *Simonton* had known of the application of the warrant to the *Hunter* tract, previous to the date of the codicil, it is reasonable to presume he knew, not only that the *Hunter* tract, but all the others, had been sold by the testator in his life-time; for the argument supposes that he was acquainted with the management of these lands, and consistently with that, he could not have been ignorant of the fact that both the *Gailey* warrant and the testator's admission of *Lodge's* title, were inapplicable to any other tract than the only one of which he retained the title, because he was directing the tract of which it was predicated to be sold. The possibility of his being ignorant of the previous sales by the testator, will not help him. Instead of acting on imperfect information, when better might have been had, is it too much to require him, in the language of Chancellor *Kent*, to have called on the vendors to disclose the source of their title? Purchasing under a will that recognized the existence of a trust estate which *might* as described, exist in the land he was treating for, and this without inquiry or examination, he ought, it seems to me, to be taken to have acted on his own responsibility. But there is enough in the case to demonstrate that the vendors actually did put him in possession of the origin of their title; the proof of which lies in the undoubted fact that *he purchased the Gailey warrant along with the land, as its appropriate and only title.* What other title had the vendors to exhibit? The *Hunter* location had been sold by the testator, as already remarked, to the corportion, for the relief of Presbyterian clergymen, and the *Popjay* location had been sold by him and *Lodge* to *Dougherty;* added to which, the *Spencer* location had been given to *Wilson*, and conveyed by him in 1790 to *Simonton* himself, who, if he did not get the *Gailey* warrant, as the title of his purchase in 1810, consented to pay for the land in dispute, without any title at all—an instance of negligence too improbable to be credited, or, if credited, too gross to entitle him to indulgence. But it was not

(Lodge *v.* Simonton.)

pretended at the trial that he got any other title. On the contrary, it was exhibited as the foundation of his patent, and the origin of his right. It is immaterial, then, what may have been his previous misconceptions of the locality of the *Gailey* tract, as he could not believe when he paid the purchase money and received the conveyance, that the admission of an interest in the *Gailey* warrant, related to any other tract than the one to be held by the warrant. If he had ever entertained doubts of it, in consequence of a knowledge, that it had once been applied to a different tract, they were susceptible of an easy solution by information, that its destination had been changed, as was perfectly competent to the owners of it, before survey returned. And we are to suppose, that he actually had this information, and was satisfied with it; or that if he had it not, the want of it is imputable to his own carelessness. The matter, then, is reduced to a simple dilemma. If the admission of *Lodge's* title is referrible to the particular tract; *Simonton*, who purchased it under the will, is to be affected with notice of it. But if it is referrible to the *Gailey* warrant, then being a purchaser of the *Gailey* warrant also, under the will, he is equally to be affected. If it is referrible both to the specific tract and the warrant, he is surely to be affected as he is a purchaser of both.

In conclusion, it remains for me to express a dissent, as to the existence of a fact in the case as stated by the judge, who delivered the opinion of the court. It is assumed, as having been proved, that *Hunter* was authorized by *Lodge*, to sell his equity along with the legal title. If that were so, the plaintiff would be postponed on a ground very different from the want of notice. But of the fact, there was no other proof than what may be thought to arise by inference from *Hunter's* direction to his executors to sell, for he has no where said that *Lodge* gave him authority. He doubtless supposed he could make title without any particular authority as he had the legal estate. But a very different view of the codicil, was taken when the cause was here before, the judgment of the court below, having been reversed for misdirection in charging that the plaintiff's were entitled to the proceeds of the land, but not the land itself. It seems to me, too, the very point mooted now, was ruled then, it having been determined that the codicil was constructive notice of the trust, and that all which remained to be decided, was a question of fact, whether the description in the codicil were actually applicable to this particular tract —a matter that never was disputed, nor could it be, for the *Gailey* warrant and the land in controversy were the only title, and the only tract that remained subject to the testator's power. With an unfeigned respect, then, for the judgment of my brethren, I may

(Lodge *v.* Simonton.)

be allowed to say, that I retain an unshaken confidence in the opin‹
ion I delivered to the jury.

    Judgment reversed and a new trial awarded.