BATE REFRIGERATING Co. *v.* GILLETT and others, impleaded, etc.

*(Circuit Court, D. New Jersey.* April 22, 1887.)

PATENTS FOR INVENTIONS—INFRINGEMENT—INJUNCTION—BREACH—SALE.

A suit was brought against several, as partners in the steam-ship business, to recover damages for the infringement of a patent by use upon one of their ships, and for an injunction. While the action was still pending, they sold out their business. ships, and property to a corporation, which assumed all their debts and liabilities. After the sale, the corporation was not made a party to the suit; but the suit progressed and an injunction was granted. *Held.* that the corporation, never having been made a party to the suit, is not bound by the injunction; and neither it nor its agents can be punished for refusal to obey the injunction.

In Equity.
*Dickerson & Dickerson*, for complainants.
*John R. Bennett*, for defendants.
*Lord, Day & Lord*, for Brown.

WALES, J. This is an application for an attachment for contempt against Vernon H. Brown, who is the accredited agent of the Cunard Steam-Ship Company, Limited, at the port of New York, and has the entire control and management of its business at that place, for the violation of an injunction granted in the above suit. The bill in this cause was filed on the fifth of February, 1878, against the Cunard Steam-Ship Company, which was impleaded with certain individuals named therein, for the infringement of letters patent No. 197,314, dated November 27, 1877, for "improvement in processes for preserving meats during transportation and storage." The answer of that company was filed on the thirtieth of March, 1878, and a decree, sustaining the validity of the patent, and ordering an injunction, was entered November 14, 1881. This decree was vacated on September 29, 1882, and reinstated March 29, 1883.

At the time of filing the bill, and putting in the answer, the Cunard Steam-Ship Company, as it was then known and called, was an association or partnership of four persons, transacting business under the name and style of the British & North American Royal Mail Steam-Packet Company, but the association appeared to the suit, and answered, without taking exception to the misnomer. The Cunard Steam-Ship Company, Limited, was incorporated on the twenty-third of May, 1878, under the British Company act of 1862, and on or about July 1, 1878, succeeded to the property and business of the British & North American Royal Mail Steam-Packet Company. On the organization of the incorporated company, the four individuals, constituting the old association or partnership, became four of the six shareholders of the corporation, and were the controlling owners and managers of it. Other purchasers of shares came in afterwards; so that prior to April 25, 1885, the partners owned not more than one-fourth of the stock, and were represented by only three members in a board of eight directors.

By an agreement made between the partnership and the corporation, at the time of the sale and transfer of the partnership property, business, and good-will, the corporation agreed to "pay, satisfy, and discharge all the debts, liabilities, and obligations of the vendors whatsoever, and adopt, perform, and fulfill all contracts and engagements binding on them, and at all times keep the vendors indemnified against such debts, liabilities, obligations, contracts, and agreements, and against all actions, proceedings, costs, damages, claims, and demands in respect thereof."

The alleged disobedience of the injunction was the transportation of covered meat by the Pavonia, one of the vessels of the Cunard Steam-Ship Company, Limited, on or about April 25, 1885. The Pavonia was a new vessel, built by the corporation, and never belonged to the old partnership. According to the statement of Mr. Brown, the company rented certain cubic space in that vessel to a third person, at so much per cubic ton, which space was occupied by a refrigerating box put into the vessel by the shipper at his own expense, in which box, on one occasion, to-wit, April 25, 1885, he shipped covered meat in a manner claimed to be an infringement of the complainant's patent. The company had nothing to do with the covering, shipment, or caring for the meat, except that the ship's tackles hoisted it from the wharf to the deck, and that a certain quantity of steam was furnished from the vessel's boilers to compress the air used in the refrigerating process. The use of steam for compressing air in the refrigerating process is not, by itself, an infringement, but becomes so, it is claimed, when used in combination with the complainants' process for preserving meat. It is not claimed that the partners sold and transferred their property to the company, or that it was accepted by the latter, with any fraudulent intent, on either part, to evade a decree in this suit; nor is it denied that the complainant had knowledge of the sale and transfer at, or about, the time they were made. Mr. Brown never acted as agent for the partnership. He was appointed agent of the corporation, on October 1, 1886.

On these facts, in support of the motion, it is contended (1) that,

where there is simply a transfer of all its property and business, by and from the individual members of a partnership to the same individuals organized as a corporation, the corporation is immediately and directly bound, and becomes, *ipso facto*, a substituted party to any litigation which may be pending against the partnership; (2) that, even if this is not so always, it is certainly so under the peculiar circumstances of the assumption of obligations which exist in the present case, and in which the corporation agrees with itself to fulfill every engagement, and to perform every duty, of the old partnership; (3) that if the corporation does not become, by its act of incorporation, a substituted party in the original litigation, yet it is so far affected by the injunction as to be bound by it, and a violation of such injunction by it is to be treated by the court in the same way as a violation by the original party.

The Cunard Steam-Ship Company, Limited, is not and never was a party to the record in this suit, and can be bound, by the decree rendered, only as a privy to one or more of the defendants in the suit, or as purchaser, *pendente lite.* A judgment binds all parties to the record, and also those whom they represent, or who are in privity with them, and claim under them. By "privity" is meant the mutual or successive relationship to the rights of property; and therefore a judgment, to be binding on one who is not a party to the record, must bind him in relation to some specific right of property which is directly affected by the judgment. 3 Bouv. Inst. 373; 1 Greenl. Ev. § 139; *Hunt* v. *Haven*, 52 N. H. 162; *Consolidated Fruit-Jar Co.* v. *Whitney*, 2 Ban. & A. 30.

The interlocutory decree rendered in this suit is against the parties defendant on the record, who have been adjudged guilty of the tort complained of in the bill, that is, of acts committed by them prior to the filing of the bill, and restrains and prohibits any repetition by them of such acts in the future; but in no manner does it relate to, or affect the title to, or interest in, any property which the corporation now holds, as vendees of the defendants. Identity of interest, in the property affected by the judgment, makes the grantee or vendee of that property privy to his grantor or vendor, whenever the sale or transfer is made after the judgment has been rendered. But here, the corporation acquired all its rights of property before the decree was entered, and it has not been shown how, or in what way, that decree concerns, or directly affects, any of the property which was assigned or transferred by the partnership to the corporation. Until this has been done, the corporation cannot be said to be in "privity" with the defendants, in the proper sense of that term. This is not the case of a fraudulent transfer of property to avoid the effect of a decree. Such cases have occurred, and some of them were cited on the argument, where a court of equity was able to see through the disguise, and to disregard it.

In *Mayor* v. *Staten Island Ferry Co.*, 64 N. Y. 622, where it was evident that the transfer was colorable, and for the purpose of avoiding an injunction, it was not allowed to prevent the issuing of an attachment against the fraudulent transferee. So, also, the mere change of the corporate name, or the consolidation of two or more corporations, will not

prevent the enforcement of legal or equitable claims against the responsible parties. *Broughton* v. *Pensacola*, 93 U. S. 270; *York & M. L. R. R. Co.* v. *Winans*, 17 How. 40; *The Key City*, 14 Wall. 653.

If, even in the absence of fraud, it could be made to appear that the original partners in the association, who voluntarily appeared to this suit, and are parties of record, had, on the twenty-fifth of April, 1885, the controlling management and direction of the business and affairs of the Cunard Steam-Ship Company, Limited, and willfully violated the injunction, a different case would be presented from the one now before the court, and there might be less doubt of the propriety of granting the motion. A corporation is an artificial body, and there is no identity between it and the persons who compose it. Here the corporation is an entire stranger to the record, and the admitted facts do not show that privity in interest and estate, between it and any of the defendants in the suit, which is necessary to bring it within the scope of the decree.

The rule of *lis pendens* is founded on constructive notice and principles of public policy, and is intended to operate for the prevention of indefinite litigation, in reference to some specific thing. It begins with the service of a summons or subpoena, and operates from that time; but it is notice only to those who have acquired title to, or interest in, the property involved in the litigation, since the bringing of the suit, from and under a party to the record against whom judgment is finally rendered. One who buys or acquires property under such circumstances becomes bound by the judgment against the party from whom he buys or acquires title, so far as the judgment affects that specific property. *Consolidated Fruit-Jar Co.* v. *Whitney*, *supra*; *Daniel* v. *Hodges*, 15 Reporter, 534; *Green* v. *Slayter*, 4 Johns. Ch. 38; *Leitch* v. *Wells*, 48 N. Y. 586.

In the last-cited case, the rule of *lis pendens* is characterized as being a hard one, not a favorite of the courts, and it was held that a party claiming the benefit of it must clearly bring his case within it. As the corporation was not the purchaser of any property involved in this suit, it cannot come under the operation of the rule.

The agreement by the corporation, to pay the debts and fulfill the contracts of the partnership, must be restricted to its expressed terms and meaning, and these do not extend beyond, or embrace more than, the payment of ascertained amounts, and the performance of contracts and obligations existing at the time the agreement was made. At that time the partnership owed no debt to, and had no contract with, the complainant. It may become obligatory upon the corporation to pay the damages which may be finally awarded against the partnership in this suit, but it will be the right of the partnership to enforce that payment. As to the complainants, the agreement is *res inter alios acta*.

An attachment for contempt is a summary proceeding, and the writ is granted only in cases which are free from any reasonable doubt on the law or the facts. *California Paving Co.* v. *Molitor*, 113 U. S. 609, 5 Sup. Ct. Rep. 618.

The motion is refused.