CHITTENDEN
January,
1830.
UZAL PIERSON, JUN. *vs.* GUY CATLIN and EDWARD PIERSON.

In chancery, the testimony of one witness, against the direct and positive averment of the answer, is not sufficient ground for a decree.

But when the testimony of the witness is corroborated by circumstances, it will be sufficient; and the answer, containing the denial, may also, in itself, contain the circumstances required.

An agreement made between the payee of a promissory note and A, one of the signers, by which A is to be discharged from all further liability thereon, will not be enforced in equity after the payee, by order of court, has assigned the judgement rendered on said note to E, he having paid the amount as the bail of one who had signed the note as surety for the other signers. In such case, E is entitled to an action in the name of the payee to recover the debt of the principal debtors.

This was a bill in chancery brought by *Uzal Pierson, jun.* against *Guy Catlin* and *Edward Pierson.* The bill alleged that the orator and John Pierson and Uzal Pierson, sen. had executed several notes to *Catlin* in payment for certain lands conveyed by him to the orator and John Pierson;—that suits had been commenced on the notes, and previous to the rendition of judgements therein, *Catlin*, in consideration of a conveyance to him from the orator of his undivided half of the premises, endorsed *$1250*, on said notes, and discharged the orator from any further liability thereon, and agreed to look wholly to the other signers for the balance;—that judgements were afterwards rendered for the balance of the notes against all the signers;—that after the rendition of said judgements, *Catlin* assigned them to *Edward Pierson*, who was connusant of said agreement, and that *Catlin* and *Edward Pierson*, caused an action to be commenced against the orator upon the said judgements, which was still pending. The bill prayed that *Catlin* and *Edward Pierson* might be enjoined from prosecuting said suit, and from using the said judgements as evidence in any court against the orator, and for general relief.

*Catlin*, in his answer, admitted that he had received a deed of the orator's interest in the lands in part payment of the notes, the value of which interest was agreed to be $1250, which sum was applied on the notes, and judgements were afterwards rendered against all the signers for the balance due on said notes;—that considering the orator had paid his share of said notes, he, *Catlin*, was willing to favor him as to the balance as far as it could be done consistently with the safety of his claim for said balance, and that he did consent to endeavor to collect the balance from the other signers; but he absolutely denied having agreed to discharge the orator from the payment of said balance, and alleged that it was expressly understood that the orator should not be released from the payment of what remained due, but should be holden for the

eventual payment thereof;—that, in pursuance of this understand-

ing, he took out executions against the orator, and John and Uzal Pierson, sen., and directed the officer not to proceed against the orator, but to execute the same on the said John and Uzal sén., and that John Pierson was committed to prison by virtue of said executions and afterwards swore out of jail, and that the executions were returned *non est inventus* as to Uzal Pierson, sen.;— that he afterwards commenced suits of *scire facias* against *Edward Pierson*, as bail of Uzal Pierson, sen., and that while said suits were pending in court, and before any judgements were rendered therein, the said court, at the solicitation of said *Edward*, did order said *Catlin*, on payment of the sum due on said judgements, to assign the same to him, the said *Edward*, and that, payment having been made accordingly, he assigned the said judgements, against the orator and John and Uzal Pierson sen., to him, the said *Edward*, agreeably to the order of court, and allowed him to make use of his, *Catlin's*, name to collect the same, and that he supposed said *Edward* had afterwards instituted the suit sought to be enjoined by the bill.

*Edward Pierson*, in his answer, denied having had any knowledge, at the time the judgements were assigned to him, of the agreement mentioned in the bill, that the orator should be discharged from any further liability on the notes, on reconveying to *Catlin* the orator's interest in the lands.  He also alleged that he had become bail for Uzal Pierson, sen., and had been sued in an action of *scire facias* by *Catlin*, and that he had paid the amount due on the judgements, and that thereupon *Catlin*, by order of court, had assigned the judgements to him;—that Uzal Pierson sen. had no interest in the land purchased, and had only signed the notes as surety for the orator and John Pierson;—that he, the said *Edward* had no interest therein, but had become bail for Uzal Pierson, sen. by endorsing his name on the back of the writs at the time when said Uzal was arrested in the suits commenced on the notes as mentioned in the bill; and that he, the said *Edward*, had commenced an action in the name of *Catlin* against the orator, as alleged in the bill.

The testimony of one witness only, Mr. Meech, was adduced to prove the agreement set forth in the bill, and that tended directly and fully to support the agreement as charged.

*Bailey and Marsh, for the orator*, contended—1. That inasmuch as it appeared that his interest in the consideration, for which

CHITTENDEN the promissory notes mentioned in the bill were originally given, was *one half only*, and that the whole of that interest was released to *Catlin*, he is to be considered, as to the balance of said notes, as a surety merely for John and Uzal Pierson, (senior,) the other signers of the notes.

*January, 1830.*

*Pierson vs. Catlin et al.*

2. That as the plaintiff is to be considered as a surety, *Edward Pierson*, who claims by virtue of an assignment of the judgements, made to him as *bail* for one of the defendants, in the original action, has no *superior equity* as against the orator.

3. That as *Edward Pierson* claims under *Guy Catlin*, he has no greater rights either in law or equity than *Catlin* himself would have. The assignee of a *chose in action* not assignable at law, takes it subject to every equitable defence which could be made as against the original payee.

4. That the agreement by *Catlin* to discharge the orator, and proceed against the other defendants, only, together with the acceptance of a deed from the orator of all his interest in the consideration of the notes, or of all that which the orator received from *Catlin*, did equitably discharge and extinguish all *Catlin's* claim against the orator.—*Briggs* vs. *Law and others*, 4 *J. C. Rep.* 22 ; *Marine Ins. Comp.* vs. *Hodgson*, 7 *Cranch Rep.* 336 ; *Newell* vs. *Hurlburt and Holmes*, 2 *Vt. Rep.* 351 ; *Constantine* vs. *Blache*, 1 *Cox*, 287.

5. The evidence, in connection with the facts admitted or not denied by the answers, is sufficient to prove the agreement between *Catlin* and the orator. The testimony of one witness, corroborated by circumstances, is sufficient ground for a decree against the direct and positive averment of the answer—and this auxiliary evidence may be found in the answer itself, although it denies the main fact in dispute.—*Hart* vs. *Ten Eyck*, 2. *J. C. Rep.* 92–3–4 ; *East India Company* vs. *Donald*, 9 *Ves.* 275 ; *Pember* vs. *Mathers*, 1 *Bro.* 52.

6. It would be unjust and oppressive, as the orator insists, to allow *Catlin* to collect of him the balance of the original debt, especially, as relying upon the promise and agreement of *Catlin*, he rested secure, and took no means to obtain any portion of the judgements from the other defendants therein, or signers of the notes.

*Adams and Thompson, contra.*—1. The discharge is not proved. The testimony of Mr. Meech is merely circumstantial,

and is not sufficient to prove a discharge. He knows nothing of the consummation of any agreement.

The testimony of one witness is not sufficient to establish a fact denied by the answer.—2. *Atkyns*, 19, *Walton* vs. *Hobbs* ; also, same *vol.* 140, *Janson* vs. *Barney* ; 2 *Maddock*, 443 ; 1 *Vernon*, 161, *Alam* vs. *Jourdan*.

After the alleged discharge of Uzal Pierson, jr. he voluntarily suffered a judgement to pass against himself and the other signers. This renders the fact of a discharge extremely improbable. The answer of *Catlin* unequivocally denies the fact, and the conduct of the orator is consistent with the facts therein stated.

2. The judgements were not obtained by fraud ; and without shewing fraud, they cannot be vacated.—1 *Maddock*, 136-7.

This agreement was confessedly not binding in law. It was without any consideration. How can it be binding in equity without proof of fraud ?

3. The orator having suffered the judgements to pass against himself and others, and those judgements having been assigned, he cannot now defeat the interest of a *bona fide* assignee.

Prentiss, Chancellor.—The bill charges, that *Catlin*, in consideration of the reconveyance to him of all the plaintiff's interest in the lands for which the notes were given, agreed to discharge the plaintiff from all liability, and make no further demand of him, upon the notes, but to look wholly to *John Pierson* and *Uzal Pierson* for payment of the judgements which should be recovered upon them. *Catlin*, in his answer, admits that he received a reconveyance of the plaintiff's interest in the lands in part payment of the notes, and took judgements for the balance, and agreed to favor the plaintiff, as to the balance, so far as to proceed on the judgements, in the first instance, against *John Pierson* and *Uzal Pierson*, and collect the money of them if practicable, holding the plaintiff, however, eventually liable for the payment of it ; but denies that he agreed to release or discharge the plaintiff from the debt, or to look wholly to the other debtors for payment.

The agreement, charged in the bill, being denied in the answer, the first inquiry is, whether the agreement is established by the proofs. One of the depositions is full and direct in support of the agreement as stated in the bill ; but the testimony of one witness, against the direct and positive averment of the answer, is not sufficient ground for a decree.—(*Walton* vs. *Hobbs*, 2 *Atk.*

Chittenden
January,
1830.
─────
Pierson
vs.
Catlin et al.

19 ; *Pember* vs. *Mathers*, 1 *Bro.* 52.) An answer, being under oath, is considered equal to the testimony of one witness, and more than that is required to disprove it. In *Smith* vs. *Brush*, 1 *Johns. Ch. Rep.* 459, it was observed by chancellor *Kent*, that it was a well settled rule, that there cannot be a decree upon the facts charged in the bill and denied by the answer, upon the deposition of a single witness ; but there must be two witnesses, or concurring circumstances, to supply the place of a second witness, before there can be a decree against the answer. Where the testimony of the witness is corroborated by circumstances, it will undoubtedly be sufficient ; and the answer, containing the denial, may also, in itself, contain the circumstances, giving to the testimony sufficient credit to found a decree upon. But here no such circumstances are contained in the answer, which is full and explicit, without any evasion or contradiction, as appears from the proofs in the case. The fact that *Catlin* directed the officer not to levy the executions on the property of the plaintiff, which was attached upon the original writs, nor to proceed against him with the executions, is not at all inconsistent with the matter stated in the answer ; for *Catlin*, in consideration of the reconveyance to him of the plaintiff's interest in the lands, might be willing to relinquish the property attached, and to endeavour to obtain payment from the other debtors, retaining the right of resorting eventually to the plaintiff for payment. And as to the fact that an inquiry was made of counsel with respect to the effect of a discharge of the plaintiff, and an opinion given that it would operate to release the other joint debtors, it does not appear whether the inquiry was made by *Catlin* or the plaintiff ; but taken either way, no inference can be drawn from it, that the plaintiff was discharged, or that it was agreed to discharge him, but the nature of the advice given would rather lead to the opposite conclusion. These are the only circumstances disclosed by the answer, or appearing from the proofs, upon which the plaintiff at all relies, as corroborating the testimony of the witness ; and it is quite plain that they are altogether insufficient for the purpose. The fact put in issue by the bill and answer is, whether the agreement was to discharge the plaintiff absolutely from the debt, or only to suspend proceedings on the judgements against him, while endeavours should be made to obtain payment from the other debtors. An agreement of so much importance as that must be, which goes to discharge a party from a large debt on the payment of only a part of it, it might well be supposed, would have been reduced into writing ; and

Chittenden,
January,
1830.

Pierson
vs.
Catlin et al.

when such proof is wanting, the agreement ought to be established by full and satisfactory testimony. The witness may have misunderstood the precise terms of the agreement ; and when to his testimony is added only slight and very equivocal circumstances, it would be dangerous, as well as against the settled rule in chancery, to act upon it, in opposition to the positive denial in the answer.

But if the agreement charged in the bill was sufficiently established by the proofs, it would not entitle the plaintiff to relief against the judgements. The principle, that an agreement with one of several joint debtors, on his giving security for his proportion of the debt, to collect the money rateably of them, is binding on the creditor in equity and conscience, was recognized in the case of *Newell* vs. *Hurlburt et al.* 2 *Vt. Rep.* 351, decided at the last term in this county ; but the circumstances of this case exempt it from the application of that principle. It appears that the debt for which the judgements were recovered was the proper debt of the plaintiff and *John Pierson*, and that *Uzal Pierson* was a mere surety for them. *John Pierson* having been committed to jail on the executions, and discharged on taking the poor debtor's oath, and returns of *non est inventus* having been made on them as to *Uzal Pierson*, *Catlin* instituted suits and recovered judgements against *Edward Pierson*, the bail of *Uzal Pierson* ; but before entering up the judgements against the bail, the court ordered *Catlin* to assign the original judgements to him ; and *Edward Pierson*, having taken the assignment, and paid the amount of the debt to *Catlin*, claims the benefit of the judgements under that assignment. It is a prominent doctrine in equity, that when a surety pays off a debt, he is entitled to have, from the creditor, an assignment of the security, and may avail himself of it, either to enforce payment against the principal debtor, or to obtain satisfaction from his co-sureties for what he has paid beyond his proportion.—(*Ex parte Crisp*, 1 *Atk.* 133 ; *Morgan* vs. *Seymour*, 1 *Ch. Rep.* 64 ; *Cheesbrough* vs. *Willard*, 1 *Johns. Ch. Rep.* 409.) By the assignment of the judgements, *Edward Pierson* acquired an equitable right to enforce them against all the judgement debtors, as well against the plaintiff as against *Uzal Pierson* for whom he was bail. If *Uzal Pierson* had paid the debt, and brought an action for money paid, laid out and advanced, against the plaintiff and *John Pierson*, for whom he was surety, it could not be pretended, that the plaintiff could set up the agreement alleged to have been made with *Catlin*, as a defence to the action,

CHITTENDEN
January,
1830.

Pierson
vs.
Catlin et al.

or as a ground for an injunction against the suit; and it is difficult to see how the plaintiff, in equity, can stand in a better condition against the bail of *Uzal Pierson,* than he could against *Uzal Pierson* himself. If he would not be permitted to set up an agreement with the creditor to throw the debt on to the surety as against the surety in any form, he ought not to be allowed to do it as against the bail of the surety, when seeking satisfaction of the debt under an assignment from the creditor. By the agreement charged in the bill, the judgements were to be enforced against *Uzal Pierson*; and can a court of equity give effect to an agreement which relieves the principal and charges the surety? An injunction, restraining *Edward Pierson* from proceeding on the judgements against the plaintiff, would leave him at liberty to proceed on them against *Uzal Pierson*; and the anomalous case would be presented, of the discharge of the principal by the interposition of a court of equity, leaving the surety liable. If the judgements should be collected of *Uzal Pierson,* the consequence would be, that he would have his action at law against the plaintiff and *John Pierson*; and if the plaintiff would thus be ultimately liable for the amount of the debt to the surety, why should he not be immediately liable for it, on the judgement, to the bail of the surety. As the agreement contemplated that the judgements should be collected of the surety, and his bail has been compelled to pay the amount, it is not competent for the plaintiff, in our opinion, to set up the agreement as a ground for relief against the judgements, after an assignment of them to the bail, to enable him to obtain satisfaction for what he has been obliged to advance. If *Uzal Pierson* had been a principal with the plaintiff and *John Pierson,* the plaintiff, on the agreement stated in the answer, might be entitled to relief against the judgements, on his paying what would be further required to make up his full proportion, which, it seems, as *John Pierson* is insolvent, would be an equal moiety of the debt.

*Note.*—After the opinion of the Court was pronounced, on motion of the plaintiff's counsel, shewing that *Uzal Pierson* was not in fact a surety, but a principal, and that the plaintiff had omitted to take testimony relative to that point, leave was given to take further testimony, and the cause continued for a further hearing, on the payment of cost.

*Bailey & Marsh,* for orator.

*Adams & Thompson,* for defendants.