## Uzal Pierson v. Guy Catlin.

A final decision, made by a court of competent jurisdiction, is conclusive upon all who were parties or privies to such decision.

A final decision, made by the court of chancery, is conclusive of the rights of the parties, in a suit subsequently brought at law, between those who were the real parties to the suit in chancery, notwithstanding another person was, for conformity, joined as a party in that suit.

Where the payee of a promissory note, signed by A., B. and C., commenced a suit upon the note, and, while the suit was pending, made an agreement with A., by which A. was to pay a certain sum upon the note, and the creditor was to take judgment for the balance against the three, but agreed that he would not enforce collection of the judgment against A., but would collect it of B. and C., or lose it, and A. made the payment accordingly, and the creditor was unable to collect the judgment of B., and a return of *non est inventus* was made upon the execution as to C., and the creditor thereupon brought *scire facias* against the bail of C. upon the original writ, and the bail obtained an order of the county court, that, upon payment by him of the amount of the judgment, the creditor should assign the judgment to him, and the creditor complied with such order, and subsequently the bail collected the amount of the judgment from A., it was held, that the creditor was not responsible for the act of the bail, in collecting the judgment after the assignment had been made to him under the order of court, and that A. could not, upon these facts, sustain an action against the creditor upon his agreement that he would not enforce collection of him.

But, *Per* Redfield, J., the county court had no power to order such subrogation of the bail to the rights of the creditor; and the bail could, at most, by such subrogation, acquire only those rights which the creditor had, and must take the judgment, subject to the agreement of the creditor not to enforce collection against A.; but the only remedy of A., to enforce compliance by the bail with the agreement, would be in chancery.

Where the cause certified for taking a deposition is in its nature temporary, the deposition should be received in evidence at any subsequent trial of the case, unless the removal of the cause for taking be shown by the opposite party.

Assumpsit. The declaration contained four special and three general counts. In the first count the plaintiff averred, in substance, that, on the 30th day of May, 1817, the defendant conveyed to him and one John Pierson certain tracts of land in Essex, in Chittenden

county, and the plaintiff, then Uzal Pierson, Jr., John Pierson and Uzal Pierson, senior, thereupon executed to the defendant their promissory notes, in the whole amounting to three thousand dollars; that subsequently the defendant commenced suits upon those notes, in Chittenden county court, and, while the suits were pending in said court, the defendant, in consideration that the plaintiff would convey to him one undivided half of the said real estate, promised that he would apply $1250,00 upon the notes, and would take judgments in the several suits for the balance, and would never after collect said judgments of the plaintiff, but would discharge the plaintiff from said judgments; and the plaintiff averred, that he did then convey to the defendant the said undivided half of the real estate, and that the sum of $1250,00 was applied upon the notes, and that the defendant took judgments in his several suits for the balance of the notes,—but that the defendant had subsequently commenced an action of debt against him upon the judgments, and had recovered judgment against him therein, and had levied his execution upon the plaintiff's property, and that the plaintiff had been compelled to pay the same, amounting in the whole, with interest and cost, to nearly $3000,00. The third count was substantially the same. The second and fourth counts alleged a promise on the part of the defendant to indemnify the plaintiff against the judgments rendered in the actions upon the notes. Plea, the general issue, and trial by jury.

On the trial in the county court,—BENNETT, J., presiding,—the plaintiff introduced evidence, tending to prove that in 1824 the defendant had commenced four actions at law against the plaintiff, his brother John Pierson, and his father, Uzal Pierson, senior, on certain notes signed by the three; and it appeared that those notes, and certain other notes, amounting in the whole to $3000,00, had been executed by the three for certain lands in Essex, which were conveyed by the defendant, by deed, to John Pierson and the plaintiff. It farther appeared, that, after the said writs were served, and while the suits were pending, a negotiation was entered into by the plaintiff and defendant, and that, at the term of the court in September, 1824, the plaintiff conveyed to the defendant one undivided half of the same lands, which had been before conveyed by the defendant to the plaintiff and John Pierson, and that the sum of $1250,00 was

then indorsed upon the notes in suit, and judgments entered for the balance against the three; and the evidence in relation to the said agreement tended to prove, that, in consideration that the plaintiff would convey the undivided half of the lands to the defendant, the defendant agreed, that judgment should be entered, in the suits upon the notes, for the balance, after deducting the sum of $1250,00, against the three signers of the notes, but that he would never collect the judgment for the said balance of the plaintiff, but would lose it, if he could not collect it of the other two, and that on this agreement the land was conveyed and the indorsement made and the judgments for the balance accordingly entered.

It appeared also in evidence, that, when the writs in the suits in favor of the defendant were originally served, one Edward Pierson became bail for Uzal Pierson, senior, upon the writs; that the executions, issued on said judgments, were returned *non est inventus* as to the said Uzal Pierson, senior, and that John Pierson was committed to jail upon the executions, and was admitted to the poor debtor's oath; that the defendant subsequently sued out writs of *scire facias* against Edward Pierson, and that judgments were entered on the same against Edward, under a rule, that, on payment by Edward to the defendant of the amount of the judgment, the defendant should assign to Edward the judgments recovered by him against the three; that Edward Pierson did pay the said amount to the defendant, and the defendant thereupon assigned the said judgments to Edward; and that subsequently Edward Pierson caused an action of debt to be commenced in the name of the defendant, Catlin, against the plaintiff, upon the judgments thus assigned, and obtained judgment thereon, and levied his execution upon the land of the plaintiff, and that the plaintiff, in order to redeem the same, paid the amount to Edward.

The plaintiff contended, that Uzal Pierson, senior, was a principal upon the notes, and, in order to prove that fact, offered, among other things, the deposition of one Dorcas Pierson,—to the admission of which the defendant objected, upon the ground that the cause of taking the deposition, as certified by the magistrate, at the time of taking the deposition, as then existing, did not continue to exist at the time of trial; and upon this point testimony was introduced by each party. The cause certified was " age and bodily infirmity; "

and the court, being of opinion that the cause still continued to exist, admitted the deposition. And the evidence on the part of the plaintiff, on this point, did tend to prove, that Uzal Pierson, senior, had a joint interest in the land with John and Uzal, Jr. ; but contradictory evidence was given, on the part of the defendant, as to the same point.

The defendant insisted, that the deed, executed by him to John Pierson and the plaintiff, was conclusive evidence, that the whole title of the land was in the grantees, and that in this case there could be no resulting trust in Uzal Pierson, senior. The defendant also insisted, and requested the court to instruct the jury, that, inasmuch as it was part of the contract, that Catlin should take judgment against the three, and should have liberty to collect the same of John Pierson and Uzal Pierson, senior, it was immaterial, whether the said Uzal Pierson, senior, was principal, or surety ; and that, if the assignment was made, as a means of enabling him to collect his debt from the other two, the defendant was entitled to a verdict.

The court instructed the jury, that, as the consideration of the notes passed from the defendant to John Pierson and the plaintiff, by means of the conveyance to them alone, the effect of this was to vest the title in them ; and that it would result from this, unexplained, that John Pierson and the plaintiff stood as co-principals on the notes, and Uzal Pierson, senior, as surety for them ; but that this did not conclusively follow ; and that the effect, in this respect, might be rebutted, by showing, by parol evidence, that Uzal Pierson, senior, had in fact a joint interest with the other two in the lands at the time of the purchase ; that it was a material point, for the jury to find the relation in which Uzal Pierson, senior, stood to the other two signers of the notes, whether as a surety, or as a co-principal with them,—and that this must be determined from the whole evidence in the case, bearing on that point ; and that, if they found that Uzal Pierson, senior, was a co-principal upon the notes with the other signers, it was evident there had been such a breach of the contract, set up in the first and third counts in the declaration, as would entitle the plaintiff to recover ; but that, if they found that Uzal Pierson, senior, was but a surety on the notes, then there had been no sufficient breach of the contract, and the defendant was entitled to a verdict.

The court also instructed the jury, that there had been no evidence in the case tending to prove the plaintiff's contract to be one of indemnity, as set up in the second and fourth counts in the declaration, and that those counts, and also the general counts, should be laid out of the case.

Verdict for plaintiff.   Exceptions by defendant.

*C. Adams* for defendant.

1.   The contract was not violated by the assignment of the judgments to Edward Pierson.   It was part of the contract, that Catlin should have liberty to collect the judgments from the other two defendants.   He had a right, therefore, to use all means necessary and proper for such collection.   He had a right to sue Edward Pierson as bail, and to take judgment, and was to take his judgment under such rule, as the court should order.   The assignment should not be regarded as an independent sale of the judgments, but as contributing, in connection with the judgment against Edward, the means of recovering the amount demandable from the bail.

2.   We farther insist, that the suit, brought by Edward Pierson in the name of Catlin, is not to be adjudged a breach of the contract. Edward stood as bail in the suit, and, on the payment of the money to Catlin, with which he had been fixed as such bail, he had a right to sue his principals ; as bail for one of the defendants, he became bail for the debt.   The debt was the joint debt of the three, and the payment by Edward of his liability operated as a discharge of the three.   Every compulsory payment must, in law, be regarded as payment on request ; and hence, in this case, the payment must be deemed as having been made at the request of all the original defendants.   The right, then, of Edward to sue was independent of any act of Catlin ; and the assignment was of no importance, except as the evidence of payment.

3.   The inquiry, submitted to the jury upon the trial, whether Uzal Pierson, senior, was principal or surety, was immaterial, and the court erred in their direction on that point.   It is not easy to perceive, how the equitable claims of the four Piersons upon each other can be adjusted in this suit ; but, waiving that point, we contend, that the right of Edward does not depend on any contingent

claim, that might accrue to the father, on his being subjected to Edward's claim upon him, but upon a claim in his own right, resting on the fact, that, as bail, he had been charged with the debt, and that the payment was for the benefit of the three.

4. We insist that the plaintiff should be estopped from averring that the father was principal ; as it would, in effect, be allowing him to take advantage of his own wrong. It is a sound principle, in the construction of contracts, that parties are responsible for expectations they have justly raised, that they are bound by such facts as may fairly be inferred from their acts, and that no one shall be permitted to falsify such expectations, or give evidence to rebut such inferences. *Robinson* v. *Nahon*, 1 Camp. 245. *Lipscombe* v. *Holmes*, 2 Ib. 441. *Mayor of Carlisle* v. *Blamire*, 5 East. 487. *Radford* v. *McIntosh*, 3 T. R. 432. 2 Stark. Ev. 31–33, 45, 47. Catlin was well warranted in considering the father as surety for the sons, and in making his contract with the plaintiff on that basis. He had before conveyed the land to the sons, and, by the operation of this conveyance, the sons stood as principals and the father as their surety. The plaintiff, by his conduct, held out to Catlin, that this was the true relation ; for he conveyed to Catlin the full *half* of the land,—thereby giving record evidence of the fact.

*J. Maeck & C. D. Kasson* for plaintiff.

The objection to the evidence, introduced to show Uzal Pierson, senior, a co-principal on the note, rests upon the ground, that the deed itself concludes all the parties from alleging an interest different from the import of the deed. Evidence *aliunde*, and even parol evidence, is always admissible, to prove a state of facts, independent of the deed itself, whereby a trust may result by implication of law,—as that the consideration was paid by him, who claims the resulting trust. *Boyd* v. *McLean*, 1 Johns. Ch. R. 582. *Rogers* v. *Murray*, 3 Paige 390. *Powell* v. *The M. & B. Manuf. Co.*, 3 Mason 347. *Meth. Ep. Church* v. *Jaques*, 1 Johns. Ch. R. 450. *Philips* v. *Cramer*, 2 Eq. Dig. 475–7. 2 Wash. C. C. Rep. 441. Jer. Eq. Jur. 85, 86. Rev. St. 315, § 22. 2 Ventr. 361. 2 Cox 93. 1 Vern. 366. 2 Atk. 71. In the case at bar the plaintiff only claimed to show a purchase on the joint account of the three signers of the notes, and that they were partners ; and to show that

a purchase by partners of real estate, on their joint account, enures to the benefit of all, though the deed be taken in the name of a part only of the firm, we cite Jeremy's Eq. Jur. 85, 86; *Wray* v. *Steele*, 2 Ves. & B. 388; Story on Part. 127 *et seq.*; *Fereday* v. *Wightwick*, 1 Rus. & Mylne 45; *Phillips* v. *Phillips*, 1 Mylne & Keen 649; *Selkrig* v. *Davies*, 2 Dow's Parl. R. 231–242; 2 Kent. 37–39; *Foot et al.* v. *Colvin et al.*, 3 Johns. 216. Estoppels are mutual; and when either party is a stranger to the contract, or the contract comes in question collaterally, and in a way to conclude the parties on the contract itself, it is always open to such explanation, as will prevent its being improperly used to injure a party on other questions. *Kip* v. *Denniston*, 4 Johns. 23. *Tripp* v. *Hathaway*, 15 Pick. 47. *Champlin* v. *Butler*, 18 Johns. 169. *Rex* v. *Scammonden*, 3 T. R. 476. 3 Stark. Ev. 1051, 1054 and note.

If it be contended, that Catlin was at liberty to pursue his remedy against John Pierson and Uzal Pierson, senior, by the terms of the contract, we say, he was limited to such a pursuit of it, as should not work a violation of the spirit of his promise to the plaintiff. That promise was absolute; his liberty to pursue the others was implied, and must be intended to be limited to them personally.

Nor can he shelter himself under a rule of court. The rule was obtained in a suit in favor of Catlin against Edward Pierson, the bail, to which this plaintiff was neither party, nor privy; and consequently he is not bound by it.

Upon the question of the breach, we claim that the interpretation of the contract, claimed by the defendant, is in violation of good faith, contravenes the plain intention of the parties, operates a fraud on the plaintiff, and is not in accordance with what the defendant authorized the plaintiff to expect; for we insist, that, by the terms of the contract, the plaintiff had a right to demand, not only that the defendant should not pursue him any farther, but that he should not cause others to pursue him. Lieber's Pol. & Legal Herm. 93 *et seq.* *Stow* v. *Stephens*, 7 Vt. 27. *Ranay* v. *Alexander*, Yelv. 76, and cases there cited. *Hopkins* v. *Young*, 11 Mass. 302. Poth. on Ob. 54, Part 2, c. 1, p. 92. Chit. Cont. 98, n. 1. 2 Kent 556, 557.

Pierson *v.* Catlin.

The opinion of the court was delivered by

REDFIELD, J.   This case has been very long before the court in this State,—in one form or another for more than twenty years.\*
In proportion, therefore, as there is the more necessity and the more earnest desire "to bury it out of sight," there is probably less hope of being able to compass such a result.

It does not seem to the court to be a case, in regard to which there is any very great difficulty.   The embarrassment in the case seems always to have arisen. from making this defendant liable for the acts of Edward Pierson, after the judgment was assigned to him by order of the court, which gave the defendant judgment for the balance of the debt against Edward, as the bail of Uzal Pierson,·the elder, who was at that time treated as and supposed to be the surety of the other two.

It is now too late to inquire, whether the county court decided according to the rules of the English common law, in making a · subrogation of the surety to the rights of the creditor, or whether the court of chancery decided according to the fact, in treating this plaintiff as a co-principal with his brother John, and Uzal Pierson, the elder, as their surety, and thus refusing the injunction upon Edward's suit.   Those questions have been decided by courts of competent jurisdiction, from whose determination, in one case, no appeal could be taken, and, what is in effect the same thing, in the other none was taken; and those decisions are conclusive upon all the parties and privies thereto.   Any attempt to reconsider those cases in a collateral way would be contrary to the soundest principles of law and of justice ; and it is only by such a course, that the plaintiff can even hope to succeed in this action.   The verdict in the county court, in favor of the plaintiff, went upon the express ground of Uzal Pierson, senior, being a co-principal, instead of a surety for Uzal Pierson, Jr., and John Pierson ; and the court expressly held in *Pierson* v. *Catlin et al.*, 3 Vt. 272, that, upon that fact being proved, they would grant the injunction ; and the cause was ultimately decided against the plaintiff upon the ground of the failure of his proof to establish that point.   The plaintiff now asks

---

\*See *Pierson* v. *Catlin et al.*, 3 Vt. 272.

Pierson *v.* Catlin.

for a verdict, upon the ground that he has proved that fact in this action. And the fact, that Edward Pierson was, for conformity, joined in that action, we do not think will make the decision any less binding upon the other parties to the action, who were in fact the real parties.

But we do not deem it necessary to go into a consideration of these questions. The only important question, it seems to us, is, whether the act of Edward Pierson, in enforcing collection of that judgment of this plaintiff, is to be considered the act of this defendant. If so, the plaintiff is undoubtedly entitled to recover ; if not, there is no pretence of any right of action against the defendant. It is not argued, that the defendant was in fault, in enforcing collection of the debt against Edward Pierson, as the bail of Uzal Pierson, senior. This he was expected to do, by the terms of his contract. Had that payment been made by Edward, without the substitution made in the county court, it would have operated to discharge the original judgment. *Allen* v. *Ogden et al.*, 12 Vt. 9.

But we do not think that this formal order of substitution, made by the county court *in invitum*, so far as the defendant was concerned, could make him responsible for every or any act, which Edward should commit under the shield of its protection. This substitution was, indeed, a matter, which, by our law, the court had no power to order. In doing so they were, in fact, enforcing the law of Justinian, instead of that of this state. For although, in a court of equity, the surety, who pays the debt, may be substituted to all the rights of the creditor, which are collateral to the main contract, yet he cannot even there, as a general rule, be put in the place of the creditor in the principal contract ; for, by the payment, *that is discharged ; and in any action brought upon it the other debtors may rely upon that payment in discharge.* *Allen* v. *Ogden*, 12 Vt. 9. 1 Story's Eq. 477, § 499 *b.* and notes. *Copis* v. *Middleton*, 1 Turn. & Russell 224, [11 Cond. Eng. Ch. R. 128,] where the law is very fully discussed by Lord Chancellor Eldon, and undoubtedly put upon its true ground. Nor does the opinion of Lord Chancellor Brougham in *Hodgson* v. *Shaw*, 3 Mylne & Keen, 183, [8 Cond. Eng. Ch. R. 338] essentially differ from the doctrines laid down by Lord Eldon, but in the main confirms them ; so that the decision of the county court, in making this substitution,

was, in effect, establishing in this State the *Beneficium cedendarum actionum* of the Institutes 3, 21, 4.   But of this it is now too late to complain.   Some of the earlier English cases go very nearly the same extent here required.   *Parsons* v. *Briddock*, 2 Vern. 608 ; and see *Wright* v. *Morley*, 11 Ves. 12, before Sir William Grant, Master of the Rolls.   But it must be confessed, the more recent cases hardly justify a court of equity, even, in decreeing a substitution of the surety in the place of the creditor, after a payment of the original contract, except as to collateral means of enforcing the payment, which were within the power of the creditor, but which he did not see fit to exercise, and which could not otherwise be made available for the benefit of the surety.

But, however this may be, it is very certain, that the surety could not, by the subrogation, acquire any *greater* rights, than the creditor had.   So that, if the creditor had, by a legal contract, bound himself not to collect more than one moiety of this plaintiff, the person taking it by substitution must take it subject to this infirmity ; and so it seems the plaintiff viewed the matter, when he brought his suit in equity for an injunction ; and so that court held,—but refused the injunction, upon the ground that Edward, standing in the place of Uzal Pierson, senior, and thus being a virtual surety for the plaintiff and John Pierson, was entitled to enforce the claim against either.   But against this the defendant's contract not to sue the plaintiff did not and was not intended to provide.   By its very terms he *was* to collect the amount of the judgment of either of the other signers ; and this plaintiff took the risk of that operating, in a circuitous manner, to compel *him* to pay it.   The plaintiff attempted, but wholly failed, to prove any contract of indemnity.

And if this action can now be maintained, the defendant will thus be deprived of one of the very advantages stipulated for in his contract.   If this plaintiff, being, in fact, either a surety for John Pierson and Uzal Pierson, senior, or a co-principal with them, has suffered injustice, to a greater or less extent as he might have sustained either the one or the other of those relations, in consequence of being treated as a co-principal with John Pierson, and thus bound to re-imburse Uzal Pierson, senior, or his bail, to the full extent of any payment made by them, it has been without the fault of the defendant and wholly beyond his control.   The defendant having

done no more than he had a right to do, and the demand having been taken out of his control by order of court, and this known to the plaintiff, he could only seek his redress against Edward, for any unlawful use of the judgment,—which was sought, indeed, in the only place where it could be enforced, and failed for want of proof. *Pierson* v. *Catlin et al.*, 3 Vt. 272, and the same case subsequently decided by this court, but not reported.

The deposition of Dorcas Pierson was correctly received in evidence on the trial. When it is certified, that a deponent is unable to travel and attend court " by reason of age and bodily infirmity," although at a former term of the court, the disability should be treated as a continuing one, unless the contrary be shown by the opposite party. All causes for taking depositions *may be*, more or less, temporary,—as living more than thirty miles from the place of trial, going out of the State and not-to return before trial,—but a deposition once taken for any such continuing disability should be received, until the removal of the cause be shown by the opposite party.

Judgment reversed and cause remanded.