# WARREN v. SWETT & a.

Where the answer of a defendant in equity, in express terms, negatives the allegations in the bill, and the evidence of one witness only affirms what has been so negatived, no decree will be made in favor of the complainant.

The answer of a defendant in equity may be overcome by two witnesses, or by one witness, with corroborating circumstances.

No form of words is necessary in the delivery of a deed. It is complete when the grantor has parted with his dominion over it, with intent that it shall pass to the grantee, provided the grantee assents to it, either by himself or his agent.

W. and S. agreed to the partition of certain land, and W. paid to S. ten dollars for a choice of tracts. Subsequently, they called upon R., who made out deeds to each of the parties of his respective tract, and they were duly signed, witnessed and acknowledged. R. then filed them, and handed to each one the deed belonging to him. S. put his in his pocket, and W. had his by him on a table. S. then called upon R. for his bill, and upon W.'s expressing some doubt whether he ought to pay one half of it, S. took from his pocket his deed, and the money which W. had paid him, and laid them on the table, and took up W.'s deed, and immediately left the room, W. calling after him. No agreement had been made that W. should pay half of R.'s bill. *Held*, that the deeds were delivered when R. gave to each one his respective deed, and that S. had no right to take away the deed of W.

If facts exists such as should put a party on inquiry, he is bound to inquire; and if he neglects to do it he will be chargeable, constructively, with notice of what he might have learned on examination.

Where S. gave a deed of certain land to W., and after the deed was delivered, but before the parties separated, S. re-possessed himself of the deed against the will of W., and subsequently made a conveyance of the premises to others, who knew that S. had taken the deed from W., against his will—*held*, that this knowledge, by the grantees of S., was sufficient to put them on inquiry, and that they were chargable with notice of what had transpired between S. and W.

IN EQUITY, the bill being filed by George W. Warren of Wolfborough against Alpheus Swett, Thomas L. Whitton, Jeremiah F. Hall, Joseph Stevenson and Oran Dixon.

The bill sets forth, in substance, that George Warren, the father of the complainant, died in 1849, leaving a certain tract of land in Wolfborough, which descended to the complainant and his brother, Benjamin Warren, who were the only heirs of the deceased.

That in March, 1850, Benjamin Warren sold and conveyed his undivided half of the land to the defendant, Swett; that Swett was to pay for the same by the acre, and that he accordingly caused a survey and plan of the same to be made by Thomas Rust, Esq.

That soon after the survey and plan were made, Swett proposed to the complainant to make partition of the land, and his proposition was this: that the complainant should divide the tract into two parts, and he, Swett, should pay him five dollars, and have choice of the parts; or that he, Swett, would divide it, and that the complainant should pay him ten dollars and have the choice; or that the tract should be divided into two equal parts, and they would bid for a choice.

That thereupon the complainant agreed with Swett that he, Swett, should divide the tract into two parts, and the complainant would give him ten dollars for the choice, and that the complainant gave Swett the money. That Swett received the money, and told Mr. Rust to draw a line across the lot, so as to leave eleven acres in one part, and leave fourteen acres and fifty-four rods in the other. That Rust then drew the line, and the complainant made choice of the eleven acres. That Swett then told Rust to make a deed from himself to the complainant of the eleven acres, and likewise a deed of the fourteen acres and fifty-four square rods from the complainant to him, Swett. That Rust accordingly made the deeds, which were duly signed, sealed and witnessed, and acknowledged before Rust by the respec-

tive parties. That Rust delivered to each one the deed belonging to him, and they were received without objection.

That the complainant then asked Rust what his fees were, and he said two dollars; that he asked him if that included the plan and survey, and he said it did; that the complainant said he thought he ought not to pay for the survey and plan; that Swett thereupon seized the deed of the eleven acres belonging to the complainant, which he had laid upon the table while taking out his pocket-book for money to pay the fees; and that Swett threw down upon the table the ten dollars which Warren had given him, and also threw down the deed, belonging to himself, of the fourteen acres, and rushed out of the room, carrying with him the complainant's deed of the eleven acres, which Swett had given him, and has ever since retained it.

That shortly after this the complainant left at the house of Swett the ten dollars and the deed, which had been executed and delivered to Swett, and demanded of him his, said complainant's deed, which Swett had carried away.

That soon after this Swett conveyed to the defendants, Thomas L. Whitton and Jeremiah F. Hall, the one undivided half of the whole tract, in the same manner as it was conveyed to Swett by Benjamin Warren; and that not long after Whitton and Hall conveyed the same to Stevenson and Dixon, the two other defendants.

The bill then charges that Whitton, Hall, Stevenson and Dixon, and each of them, severally had, at the time they received the deeds of the land, full knowledge of the partition that had been made between the complainant and Swett, and of the deeds that had been passed between them, or the knowledge of such facts as should have put them on inquiry; and that Stevenson and Dixon threaten to have partition of said land made with the complainant.

The bill prays for an injunction upon Stevenson and Dixon against attempting to have partition made of the premises with the complainant, and against conveying the

same to any one. It also prays for a decree compelling Stevenson and Dixon to re-convey the land to Whitton and Hall; and compelling Whitton and Hall to reconvey to Swett, and for Swett to convey to Warren, the complainant.

There is also a prayer for general relief.

The defendant, Swett, in his answer, admits that George Warren owned the land, and that the complainant and Benjamin inherited it from him. That he purchased Benjamin's undivided half. He admits the agreement for the partition in the manner stated in the bill, and the making and execution of the deeds; but he says that the survey was made for the purposes of the partition, and not to ascertain the quantity of land. He denies that the deeds were ever delivered, and says that the agreement for the partition was thrown up in consequence of the difference about the expenses, and that the complainant took both the deed and money, and agreed that the land should remain as it was.

The defendants, Whitton and Hall, admit generally the facts stated in the bill. They admit, also, that prior to the conveyance by Swett to them, they had heard that Warren and Swett had agreed to divide the land, and that deeds had been made, as stated in the bill, to give effect to the agreement; and that a dispute arose between them, and that Swett took his deed to Warren, and carried it away, and that Warren was dissatisfied. But they aver that, at the time of receiving the deed from Swett, they had not full and perfect knowledge of the partition, or of the making and delivery of the deeds.

The defendants, Stevenson and Dixon, also admit generally the facts as stated in the bill. They also admit that, before the conveyance to them by Hall and Whitton, they had heard that Warren and Swett had agreed upon a division of the land, and that deeds were made by each of them for the purpose of effecting the division; that a dispute arose between them at the time they were making the division, and that Swett took his deed to Warren, and carried it

away, and that they were told there might be some dispute about the title. But they aver they had no further knowledge about the matter.

This statement of the bill and answers is quite brief, compared with their length, but, it is believed, that enough is set forth to present the points at issue between the parties.

*Bellows* and *Hill,* for the complainant.

I. The deed from Swett to Warren was delivered. All the stipulations of the contract were performed upon both sides. The deed was in the hands and power of the grantee, with the consent of the grantor, and with the intent that it should operate as a muniment of title. No formalities were necessary. 3 Greenleaf's Cruise's Dig. Tit. 32, ch. 2, § 64, n. 1; *Canning & ux.* v. *Pinkham & a.,* 1 N. H. Rep. 357; *Doe* v. *Knight,* 5 Barn. & Cress. 671; *Parker* v. *Dustin,* 2 Foster's Rep. 424; *Porter* v. *Cole,* 4 Greenl. Rep. 25; *Woodman* v. *Colbrooth,* 7 Greenl. 181; 4 Kent's Com. 456; *Blight* v. *Schenck,* 10 Barr's Rep. 285; 2 Greenl. Ev. § 297 and notes.

II. The delivery of the deeds was not revoked. Swett had no right or power to revoke the delivery. The delivery was absolute, and in no way dependent upon the payment of the expenses, or any part of them, by Warren. And the deed was taken back by Swett without the consent of Warren. Besides, the plaintiff was not bound to pay any part of the expense of the survey, it having been made by Swett, because of his purchase of Benjamin Warren. The evidence shows that the deeds were taken into the possession of the parties, and were not recalled. The answers are entirely disproved by the testimony. The land, having once passed, cannot revest without the consent of both parties to the re-delivery of the deeds.

III. The plaintiff, Warren, demanded of Swett a return

of the deed from Swett to him, and which had been carried away by Swett.

IV. The description of the land in the deeds then made by the parties was sufficient. The deed from Warren to Swett referred to a divisional line, agreed upon by the parties, and which was designated in the deed from Swett to Warren. Besides, such was the relation of this divisional line to the other boundaries of each lot, that it could be easily found with the assistance of either one of these deeds alone. In addition to this, Swett accepted the deed from Warren to him.

V. The grantees of Swett and their assigns are chargeable with notice of this partition and conveyance. And the plaintiff is entitled to a release of all their interest in the land before conveyed to him by Swett. They purchased at their peril. 1 Story's Eq. Jur. § 399, and cases cited ; *Rogers* v. *Jones*, 8 N. H. Rep. 264.

*Bell*, for the defendants.

I. There was no actual delivery of the deeds, and certainly none at a consummation of their agreement to make partition. This is a question of fact depending upon their intention. *Chandler* v. *Temple*, 4 Cush. 285; *Rhodes* v. *Gardner*, 17 Shepl. 110; *Commercial Bank* v. *Reckless*, 1 Halst. Ch. Rep. 430.

II. It belonged to the plaintiff to pay part of the expenses of the conveyance. We have a right to say that the business was not closed, nor the deed passed till the expenses were paid.

III. The complainant assented to what was done by Swett at the time, and afterwards, and waived any right to insist on the delivery of the deeds.

IV. Whitton and Hall had purchased the land without notice, before the complainant tendered the deed and money to Swett.

EASTMAN, J. The only material matters in controversy between Warren and Swett, relate to the delivery of the deeds and to the abandonment of the agreement to make the partition. Upon these two points there is a direct issue, and several depositions were taken bearing upon them.

Judge Rust, who made the deeds, testifies that in March, 1850, he was called upon by Swett to run out the land and ascertain its contents, and that he did so. That, after the survey was completed, Swett proposed to Warren, who was present, to make partition of the land, and Swett made the proposals stated in the bill; that Warren acceded to the proposal to pay Swett ten dollars for the choice of lots, after Swett should divide the tract, and he then paid Swett the money. That they then requested the witness to make out the deeds from one to the other, and he did so. The witness then proceeds to say : " The deeds were read to them, and they signed them, respectively, and acknowledged them. They were then folded up by me and superscribed, and handed by me to each, and Swett put his in his pocket. The deeds were sealed and witnessed before being delivered by me. After they were handed to them, Swett asked the witness what his bill was, and he told him two dollars for the survey and casting the contents. Swett said to Warren that it would be a dollar apiece. Warren replied, I don't know, Mr. Swett, about my paying one half the expenses. Swett objected to paying all the expenses, and took out his deed and the ten dollar bill and laid them down before Warren, and took up Warren's deed, and then immediately turned and went out of the door. As he was going out, Warren spoke and said, Stop, Mr. Swett, let us see if we can't settle this, or reconcile it. The witness thought Swett did not hear Warren speak to him; that there was nothing more said and Swett did not return. Warren left soon after, and took with him the deed and the ten dollar bill that Scott left on the table; but he did not touch them till after Swett was gone."

Two other witnesses, who were present when the deeds were executed, testify, substantially, in the same manner as the preceding witness, as to the facts that took place at that time; and there is no evidence contradictory of this, nor any showing that Warren then, or at any time, agreed to abandon the partition or give up the deeds, as stated by Swett in his answer, or that he agreed to pay any of the fees for the survey. Swett's answer is, in fact, contradicted by three witnesses, which is, at least, one more than the rule requires. It is not necessary that there be two witnesses even, for notwithstanding an answer which is responsive to the bill, and which directly negatives it, will stand good against one witness, and no decree will be made against it until more evidence is adduced; yet the answer may be overcome by one witness, supported by circumstances corroborating the plaintiff's case, especially if those circumstances be equivalent to the testimony of another witness. 2 Story's Eq. Jur. § 1528; 1 Greenl. Ev. § 260; 2 Danl. Ch. Prac. 985; *Clarke* v. *Van Reimsdyk*, 9 Cranch 160; *Pember* v. *Mathes*, 1 Bro. Ch. Rep. 52; *Columbia Bank* v. *Black*, 2 McCord's Ch. Rep. 344 ,350; *Pierson* v. *Catlin*, 3 Vt. Rep. 272; *Cunningham* v. *Freeborn*, 5 Paige 551.

The only evidence having a tendency to show that Warren acquiesced in the surrender of the deeds, was his taking the money and deed after Swett had left Rust's house, and retaining them in his possession some two weeks before seeking Swett, and tendering them to him and demanding his deed.

The testimony also shows that Swett purchased of Benjamin Warren by the acre, and that he agreed to ascertain the quantity of the land at his own expense; and the evidence tended to show that the survey made by Rust was in consequence of that purchase and agreement, and not by any arrangement with the complainant.

From an examination of the evidence, which is somewhat voluminous, we are satisfied that the allegations of the bill are substantially made out.

We think that the deeds were delivered. No form of words is necessary in the delivery of a deed. It is complete when the grantor has parted with his dominion over it, with intent that it shall pass to the grantee, provided the grantee assents to it, either by himself or his agent. Co. Litt. 36; Shepard's Touchstone 57, 58; *Verplanck* v. *Sterry*, 12 Johns. 536; *Porter* v. *Cole*, 4 Greenl. Rep. 25; Com. Dig. Fait. A. 3; *Blight* v. *Schenck*, 12 Barr 285; *Souverbye* v. *Arden*, 1 Johns. Ch. Rep. 240; *Jones* v. *Jones*, 6 Conn. Rep. 111; *Doe* v. *Knight*, 5 Barn. & Cress. 671.

The delivery may be by an agent of the grantor, as well as received by an agent of the grantee. When the grantor assents that the deed shall pass into the hands of the grantee, and the grantee assents to its reception, the delivery is complete.

If both parties be present, and the usual formalities of execution take place, and the contract is to all appearance consummated, without any conditions or qualifications annexed, it is a complete and valid deed, and this notwithstanding it be left in the custody of the grantor. 4 Kent's Com. 455.

These deeds were made by the request of the parties. They were duly executed and acknowledged, and Warren had previously paid to Swett the ten dollars, as the consideration for the choice. They were passed over to the respective parties by the gentlemen who made them, in the presence and without the dissent of either, and Swett put his into his pocket; and it was not till the bill for the survey came to be settled that any dissatisfaction was manifested. But it was then too late to revoke what had been done. The bill for Judge Rust's services had formed no part of the agreement for the partition, and he had his claim upon one or both for what he had done. It was not in the power of either party to annul a conveyance thus deliberately executed and upon good consideration.

The fact that Warren kept the deed of Swett and the ten

dollars for two weeks, might tend to show that he agreed to the surrender of the deeds, if there were any thing else to corroborate it. But there is not. All the evidence is the other way, and a man unacquainted with his legal rights might well enough take the course he did without any intention of abandoning the partition. As against Swett, then, we think, the complainant had good ground for filing his bill, and that he should have a decree in his favor.

We think, also, that the complainant is entitled to relief against the other defendants. They took the conveyances with a knowledge of all the material matters that had transpired. This their answers virtually admit. They admit that, prior to the conveyances to them, they had heard that Warren and Swett had agreed to divide the land, and that deeds were made, as stated in the bill, to give effect to the agreement; that a dispute arose between them, and that Swett took the deed which he had given to Warren, and carried it it away against the will of Warren; and that they were told there might be some dispute about the title. It is true that they add that they had not full and perfect knowledge of the partition or the making and delivery of the deeds. But this is a negative of a very unsatisfactory kind, and, it appears to us, does not weaken, in any degree, the force of the previous admissions. The defendants knew that the partition had been made, and that deeds had been given.  They knew that Swett had carried away Warren's deed without his consent, and that there was a dispute about the title. Indeed, it is difficult, from their answers, not to arrive at the conclusion that they were well informed in regard to the whole transaction. With the facts that were within their knowledge, they ought to have inquired of Warren and of Judge Rust, and the witnesses to the deeds. What they knew should have put them on inquiry, for where facts exist such as should put a party on inquiry, he is bound to inquire. *Green* v. *Slayter*, 4 Johns. Ch. Rep. 46; *Farnsworth* v. *Childs*, 4 Mass. Rep. 639; *Taylor* v. *Stibbert*, 2 Ves. jr.

440; *Lessee of Billington* v. *Welch*, 5 Binney 132; *Dexter* v. *Harris*, 2 Mason 536.    And if he neglects to inquire, it is at his peril, and he is in such case chargeable, constructively, with notice of what he might have learned on examination. *Sterry* v. *Arden*, 1 Johns. Ch. Rep. 267; *Frost* v. *Beekman*, 1 Johns. Ch. Rep. 299.

We entertain no doubt that if the defendants had not full and perfect knowledge of all that was done, they had quite sufficient to put them on inquiry, and to charge them with notice; and if under such circumstances they saw fit to purchase the land, they must be held to have done it at the risk of having their title defeated.

Our conclusion, therefore, is, that the prayer of the bill should be granted.