## MERILLAT v. HENSEY.

LIS PENDENS; JUDGMENTS AND DECREES; COLLATERAL ATTACK; EQUITY PLEADING.

1. When land or an interest therein is in litigation, a purchaser from or under one of the parties thereto is as conclusively bound by the result of that litigation as if he had become an actual party; and notwithstanding the particular subject-matter may not have been included in the original action or suit, it may be brought in by amendment, and the result upon after-acquired interests therein is the same.

2. A decree merely erroneous, and not void, because the court had jurisdiction over the subject-matter of the suit and the parties, is not subject to collateral attack.

3. Where one of the defendants in an equity suit is treated in the prayers for relief in the bill of complaint as a trustee in fact, and an accounting by him is sought, *it would seem* that after a final decree has been passed in favor of the complainants, it is too late for such defendant to claim that he was not bound in his capacity as trustee.

4. In a suit in equity to subject the alleged beneficial interest of certain defendants in land, which they had held under a deed in trust, and which they conveyed to their alleged *cestuis que trusts* immediately before the passage of the decree against them in a suit pending when such conveyance was made, and which established a lien in favor of the complainants upon such defendant's equitable interest, it is no defense to such *cestuis que trusts* that, in the suit in which the decree was rendered, relief was not asked against such defendants as such trustees, or as to the naked legal title which was vested in them.

5. Perfect certainty of description of the subject-matter in a bill in equity to create a *lis pendens* is not essential. It is enough if it is sufficient to put the parties dealing with the subject-matter upon an inquiry which, if pursued with diligence, would lead to certain identification.

6. Where a bill to create a *lis pendens* against land refers to a deed, but a copy of it is not made an exhibit, the deed cannot be regarded as part of the pleading, but the fact that the deed was referred to is

a material circumstance to be considered in connection with others in determining whether third parties would have been put upon inquiry if they had actually read the pleadings.

7. The effect of a bill of complaint to create a *lis pendens* against land, described for the first time in a paragraph to the bill added by amendment, is not impaired by the fact that in a special prayer, duly added by amendment, the number of the added paragraph is erroneously given, where no intelligent person would be misled by such error; nor by the further fact that the bill contains no special prayer for the sale of the land.

8. Relief will always be granted under a prayer for general relief where it is agreeable with the case plainly stated in the bill.

9. Where one lends money to another on the security of a certificate of ownership in land which is in litigation, he is bound by the result of such litigation although he acted in good faith.

10. Where a party claimed to have acquired an interest for value and in good faith in a certificate of ownership of land in litigation, before the commencement of the litigation, it was *held,* under the circumstances recited, that the burden of so proving was upon him.

11. In a suit in equity to enforce a personal decree in a former suit, by establishing a beneficial ownership of the debtors in certain land claimed by them to have been held in trust under a trust deed in which no beneficiaries were named, and which they conveyed to their alleged *cestuis que trusts* immediately prior to the rendition of the decree, the conveyance was allowed to stand as to certain of the *cestuis que trusts,* irrespective of the question whether the deed in trust authorized it to be made, on the ground that their interests were acquired in good faith and prior to the commencement of the former suit against the trustee, and was vacated as to the others on the ground that as to them the evidence showed to the contrary.

No. 2046. Submitted January 7, 1910. Decided February 1, 1910.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, dismissing a creditors' bill. *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing a creditors' bill filed by the appellants, Charles H. Merillat and Mason N.

Richardson, trustees, in the supreme court of the District, on June 30th, 1906.

The bill alleges that complainants are trustees appointed by decree of the supreme court of the District, passed in equity cause No. 24,084. That on May 24th, 1906, they recovered a decree in the said District supreme court against the defendants Thomas G. Hensey and Melville D. Hensey, among other things, for the sums of $15,445.07 and $53,819.17, for which execution was awarded. That execution thereon issued in June, 1906, was returned *nulla bona*. That no part of said decree has been paid, and defendants have no property subject to execution at law. That by deed recorded in liber 1891, folio 184, of the records of deeds in said District, there was conveyed to the defendants Hensey a tract of about 9 40/100 acres of land known as "Dry Meadows," in trust for certain parties whose interests therein are undisclosed by the record. That the said Henseys were the owners of six-tenths interest in said land, held in trust by them. That the said Thomas G. and Melville D. Hensey, conspiring with each other and their codefendants to defeat the decrees aforesaid, and to hinder, delay, and defraud complainants and other creditors, on May 21st, 1906, conveyed the said land to their codefendants, as follows: To Stevens, Dyer, Soule, and Holmes, each an interest of one-tenth, and to Landon and Kimberly each an interest of three-tenths. That complainants are entitled to have said deed canceled and the said land sold, and the proceeds distributed among the several persons beneficially interested. They prayed that the said deed be declared fraudulent, and canceled, and that the interest of said Hensey be sold in satisfaction of their decree aforesaid. Annie Holmes answered the bill, alleging that she purchased a share amounting to one-tenth interest in said land in February, 1891, and that the conveyance to her of said interest was made to vest the legal title to the same in her. Stevens, Dyer, and Soule answered to the same effect. The Henseys answered jointly, alleging that they had held the said land in trust for the shareholders, Melville D. Hensey having no beneficial interest. That Landon purchased one of said

shares, representing a one-tenth interest, of Thomas G. Hensey in August, 1901, and in September, 1901, loaned said Hensey $1,600 secured on two other shares. That said Hensey borrowed $2,500 of Kimberly in November, 1903, which debt was secured on said remaining shares. They deny the fraud charged and allege that the deed of May 21, 1906, was for the purpose of declaring the trust and putting the names of the beneficiaries on record. They allege that Stevens, Dyer, Soule, and Holmes were original members of the syndicate organized in 1891, and held each a one-tenth interest therein. Landon's answer alleged that long prior to August 24, 1903, he purchased a share of Thomas G. Hensey, paying him therefor $1,200, and shortly thereafter lent him $1,600, for which two shares were pledged. That he had no notice of any equity against said Hensey, and in good faith believed him to be the owner of said shares. That said deed to him and others was to give a record notice of the ownership of said shares. Susan V. Kimberly alleges that she had no knowledge who were original shareholders in the syndicate, save such as derived from Thomas G. Hensey. She denies all fraud alleged, and says that on November 9, 1903, she lent Thomas G. Hensey, $2,500 for three years, taking his note therefor secured by three shares of said syndicate. That she had no notice of the bill against said Hensey. That on May 21, 1906, said Hensey conveyed to her the three-tenths interest in fee-simple as a further security for said loan, and she took the same without notice and in good faith. Testimony was taken, and after hearing the bill was dismissed. The conclusions announced by the learned trial justice were substantially: 1. The testimony did not show that Kimberly or Landon were conscious of, or concerned in, a fraudulent purpose to anticipate the decree in No. 24,084. 2. They had no actual notice of the proceedings in No. 24,084. 3. That the allegations, prayers, and descriptions of said bill and amendment of August 20, 1903, were not sufficient to constitute a *lis pendens* affecting the transactions between Hensey and said defendants.

Vol. XXXIV.—26.

The complainants, *Mr. Charles H. Merillat* and *Mr. Mason N. Richardson,* appeared in proper person.

*Mr. E. H. Thomas* and *Mr. William Henry White* for all of the appellees except Mrs. Soule.

There was no appearance for Mrs. Soule.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first question for consideration is whether the appellees are bound by the decree rendered May 24, 1906, in equity cause No. 24,084, as purchasers *pendente lite.* This is determinable by the record. The original bill was filed July 18, 1903, by Richardson and others against Thomas G. Hensey, Mellen C. Hooker, and Melville D. Hensey. This bill had no reference to the land in this controversy. It is sufficient to say that it was a bill by shareholders in a land "syndicate" to recover profits fraudulently made by the defendants in the purchase of certain lands for said syndicate, while acting as their trustees and agents. The prayers were for discovery, injunction, accounting, and for the appointment of a receiver, and concluded with a prayer for general relief. Subpœnas were promptly served upon the defendants. On August 20, 1903, an amendment was filed by the complainants, inserting a new paragraph in the bill, following paragraph 12, entitled "12½." This alleged that by means of the frauds charged in the original bill, defendants had wrongfully obtained money from complainants, which had been used by them in the purchase of other lands, the titles to which they held. Among these tracts they describe the one in controversy as follows: "A tract of land known as Dry Meadows, in the county of Washington, District of Columbia, beginning for the same at a stone marking corner of the late Charles R. Belts' land, and running thence with 41¾ due east 57.84 perches to a stone; thence north 44 degrees east 13.66 perches to a stone on Broad Branch

road; thence 15½ degrees west 58.12 perches Jones's lines, thence north 60 degrees west 2.32 perches to a stone and place of beginning, containing 9.40 acres of land, more or less, title to the same being taken in the name of Thomas G. Hensey and Melville D. Hensey as joint tenants, and in trust for contributors to the purchase price thereof, by deed dated January 13, 1893, and recorded February 28, 1894, in liber 1891, folio 184 et seq., of the land records of the District of Columbia." Additional prayers were also inserted in the original bill by this amendment, asking discovery in respect of the matters alleged in paragraph 12½, for an injunction against disposing of any property described in paragraph 12; and that a trustee be appointed to sell the interests of defendants in the real estate described in paragraph 12 of complainants' bill, for the benefit of complainants. The defendants answered, and testimony was taken and reference made to the auditor for the statement of the amount due by the defendants. A final decree was rendered on May 24, 1906, approving the auditor's report. Merillat and Thomas, for whom Richardson has since been substituted, were appointed trustees for the complainants, and defendants were ordered to pay them the sums of $53,819.17 and $15,445.07, which were declared to be liens on the shares of defendants in the Le Droit park land syndicate. Paragraph 9 of the decree provides that, unless the money decree be satisfied on or before June 20, 1906, Thomas G. Hensey be and is hereby adjudged to have held all of his right, title, and interest, as of date August 24, 1903, the date of the service of an amendment to complainants' bill naming said property as having been purchased with the fruits of the fraud perpetrated on his cosyndicate members by Thomas G. Hensey, in and to the following described tract of land known as Dry Meadows (with metes and bounds as described in the amended bill). Hensey is ordered to make a conveyance thereof to the said trustees, passing all of his interest, as of August 24, 1903, and in case of his failure the decree to work a passage of the title; and the trustees are ordered to sell the same, discharged from the effects of any conveyance by said Hensey not recorded prior to

August 24, 1903, in satisfaction of said money decree, etc. On October 25, 1907, said paragraph was amended, now for then, correcting the description of said Dry Meadows tract of land so as to read: "Beginning at the stone in the corner of the late Charles R. Belts' land and running thence south 41¾ degrees east 57.84 perches to a stone; thence north 44 degrees east 13.68 perches to a stone on Broad Branch road, thence north 15½ degrees west 58.12 west to Jones's line; thence north 60 degrees west 2.32 perches to a stone; and thence south 50¾ degrees west 35 perches to the place of beginning, containing 9.40 acres of land more or less, being the same property conveyed to Thomas G. Hensey and Melville D. Hensey, trustees, by deed dated January 13, 1893, and recorded February 28, 1894." Book and folio as stated.

When land or an interest therein is in litigation a purchaser from or under one of the parties thereto is as conclusively bound by the results of that litigation as if he had become an actual party. And notwithstanding the particular subject-matter may not have been included in the original action or suit, it may be brought in by amendment, and the result upon after-acquired interests therein is the same. *Tilton* v. *Cofield,* 93 U. S. 163–168, 23 L. ed. 858–860; Bennett, Lis Pendens, § 95. The record shows that the conveyance under which the appellees Landon and Kimberly hold title to the six-tenths interest of Thomas G. Hensey in the Dry Meadows tract of land was made long after the amendment bringing that land into litigation, and only four days before the decree was entered. The conclusiveness of that decree as to these *pendente lite* purchasers is denied upon several grounds, which will now be considered.

2. It is argued that the decree is invalid because it awards two distinct and inconsistent reliefs, namely, the recovery of the profits made by the trustees, and the declaration of a trust in favor of the defrauded parties, in the lands acquired by said profits. The bill is inartificial and may have been subject to demurrer upon that ground; the decree following the bill may have been erroneous. Assuming this to be so, however, the court had jurisdiction of the subject-matter of the suit and of

all the parties thereto, and the decree is not subject to collateral attack.

3. The next objection is that the Henseys were not made parties to the suit as trustees. The record does not support this contention. The original bill recites that Thomas G. Hensey and Hooker "are sued in their own right and as trustees; that Melville D. Hensey is sued in his own right and as agent of the trustees aforesaid and your complainant," etc. Thomas G. Hensey and Hooker were the express trustees of the syndicate for the lands described in the original bill. In the prayers for relief Melville G. Hensey is treated as a trustee in fact, and an accounting is asked for by him also. The amended bill makes no new parties. Melville D. Hensey was a party, whether technically as a trustee or not, and could hardly claim hereafter that he was not bound by the decree in that capacity also. But the point seems to be immaterial. The present bill does not seek to remove the Henseys as trustees of the Dry Meadows syndicate, or to devest them of their naked title as such. Its substantial object was to subject the beneficial interest of Thomas G. Hensey in that land alleged to amount to six tenths thereof, to which he claimed title as an original certificate holder therein. In this respect the decree followed the bill. In so far as Landon and Kimberly, who were not original certificate holders, are concerned, the conveyance under which they claim, while purporting in some of its recitals to be a declaration of the trust in favor of certificate holders, was substantially a conveyance of the said six-tenths interest of Hensey to them. It was this equitable interest of Hensey that was sought to be subjected to the payment of the money decreed against him. It is not perceived how the effect of the decree is impaired by failure to ask relief as to the naked legal title of Hensey. If Landon and Kimberly hold that legal title under the conveyance, they hold it subject to the decree establishing the lien upon the equitable interest, under proceedings begun before the conveyance was made. The case relied on by the appellees as holding that, to create a *lis pendens,* the holder of the legal title must be a party, is not in point. *Miller* v. *Sherry,* 2 Wall.

237, 17 L. ed. 827. In that case a general creditor's bill brought on a judgment rendered after the fraudulent conveyance by the debtor had been made neither made the fraudulent vendee a party nor described the land conveyed to him. It was held not to create a *lis pendens* so as to bind a purchaser of the land, under a decree in another creditor's suit attacking the conveyance as a fraud and making the purchaser a party.

4. Several objections made to the effect claimed for the pending litigation are founded on the pleadings therein. It is well settled that a bill to create a *lis pendens* must be so certain in its description of the subject-matter that anyone reading it can learn what property is involved in the litigation. *Miller v. Sherry,* 2 Wall. 237–250, 17 L. ed. 827–830. But perfect certainty is not essential. That is certain enough which may be rendered absolutely certain by reasonable inquiry; and that which is sufficient to put one upon inquiry is all the notice that can be required. *Green v. Slayter,* 4 Johns. Ch. 38–46; *Boyd v. Emmons,* 103 Ky. 393–403, 45 S. W. 364; Bennett, Lis Pendens, pp. 155, 156. The description in the bill, though technically defective in a single respect, was probably sufficient to point out to the appellees, with the requisite certainty, had they read it, the particular property and the remedy sought against it. Whether so or not, it was sufficient to put them upon an inquiry which, if made with the slightest diligence, would inevitably have led to certain identification. The omission and mistake referred to occurred in the description of the metes and bounds, but adjoining lands and a public highway, presumably known to persons interested in the land, were expressly called for as indicating boundaries. Moreover, the exact quantity of the land was given, and it was described by the name "Dry Meadows," by which it was known and called. It is so recited in the conveyance under which the appellees claim. Again, it was described as the same land conveyed to Hensey and Hensey trustees, the date of the said deed, and time and place of its record, being recited. It is true that a copy of that deed not having been made on exhibit to the bill, it cannot be regarded as a part of the pleading and as such binding the appellees. But the refer-

ence to it is a material circumstance to be considered in connection with the others in determining whether the appellees would have been put upon inquiry had they actually read the pleadings.

5. Another objection is that the special prayer for the sale of this land, in the amendment of August 20, 1903, refers to the same as described in paragraph 12 of the bill. This is evidently a mere clerical error. There is but one paragraph in the amended bill, and that is numbered 12½, and paragraph 12 of the original bill applied to a separate and distinct matter relating to the misappropriation of trust funds, and described no lands. We think that no intelligent person would have been misled by this clerical error. What has been said applies also to the further objection that there was no special prayer for the sale of this land. However, had there been no special prayer at all, the general prayer for relief would furnish a sufficient foundation for the decree. Relief will always be granted under the general prayer, where it is agreeable with the case plainly set out in the bill. *Tayloe* v. *Merchants' F. Ins. Co.* 9 How. 390–405, 13 L. ed. 187–193; *Texas* v. *Hardenberg* (*Texas* v. *White*), 10 Wall. 68–86, 19 L. ed. 839–841; *Jones* v. *Van Doren,* 130 U. S. 684–692, 32 L. ed. 1077–1080, 9 Sup. Ct. Rep. 685; *Tyler* v. *Savage,* 143 U. S. 79–98, 36 L. ed. 82–90, 12 Sup. Ct. Rep. 340.

6. The evidence tends to show that three of the Hensey certificates of ownership in the Dry Meadow tract were pledged to Susan V. Kimberly to secure the sum of $2,500 due by Hensey to her; and there is no evidence to impeach the fairness of the transaction on her part. Thomas G. Hensey had been acting as her agent for the investment of money. She appears to have had implicit confidence in his integrity. At his request, on November 4, 1903, she lent him $2,500, which he had collected for her on a loan, for which he gave his note and pledged to her the three certificates aforesaid. As this transaction occurred after the amendment bringing the Dry Meadows land into the litigation had been regularly made, Mrs. Kimberly is bound by the result of that litigation, notwithstanding her good faith.

7. The testimony relating to the acquisition of Landon's in-

terest in the three other Hensey certificates is not so satisfactory in respect either of the date of the commencement of that interest or the genuineness of his title. He had been intimately associated with Hensey for years in the matter of loans and investments. In his answer he says that, "long prior to August 24, 1903," he purchased of Hensey one share in the said syndicate, paying therefor, in good faith, the sum of $1,200, and that "long prior" to said date also he lent Hensey $1,600, in good faith, on two shares in the same. In his testimony given April 11, 1904, in cause No. 24,084, he said that he was interested in the Norwood syndicate, but not other. He had a settlement with Hensey in October, 1901, receiving a note of one Dodge for the balance $5,250. No mention was then made of the purchase of the first certificate, or loan on the other two. Hensey, who testified at the same time in said cause, stated that the original shareholders in the Dry Meadows land were Soule, Stevens, Holmes, Dyer, and himself. He also testified to the settlement note given to Landon, and made no statement of any transaction with him regarding the Dry Meadows certificate. Landon was in bad health at the time the testimony in this case was taken, and, though subpœnaed by complainants, did not appear. The testimony is in conflict as regards his physical and mental condition at the time, but he was able to be out, and the officer who served process on him, and a notary also, observed no mental weakness. It seems that some time before he haad conveyed all his property to his brother and cousin in consideration of a promise to pay him $75 per month during life. The cousin's husband produced, as found in Landon's papers, a certificate signed by the Henseys and Landon as of date August 19, 1901, reciting that Landon had contributed one tenth of the sum expended for the purchase of the Dry Meadows land, and declaring a trust in his favor for such interest. This had indorsed on the back in pencil the name of Landon, "Broad Branch," and "paid $1,-200." Certificate No. 6 was also produced. It purports to bear date September 5, 1901, as issued to Hensey, and is indorsed as follows, above his signature: "For value received, I hereby transfer." A note for $1,600, bearing date September 5, 1901,

and executed by Hensey, was also produced.  This note recites the deposit of certificate No. 6 for two shares, as collateral security.  On the back of this note, in the writing of Hensey, are indorsements of interest paid September 5, 1903, 1904, 1905.

. The answer of Landon claims only to hold two of the certificates as collateral security, but the conveyance of May 21, 1906, that is attacked herein, recognizes him as the absolute owner of three shares, and conveys the land to him as such.  It is difficult to understand why Landon's answer should not have been more specific in regard to the dates of these transactions.  Under the conditions of the case he was charged with the burden of showing that he acquired an interest in the certificates for a valuable consideration and in good faith before the land represented by them was brought into the litigation.  This he has not done to our satisfaction.

8. As regards the appellees Helen M. Soule, Annie Holmes, Charles W. Stevens, and Leonard H. Dyer, the conditions are entirely different.  These parties appear to have been original contributors to the Dry Meadows syndicate, and holders of certificates therein.  They are not shown to have had any connection with the frauds alleged against Hensey in the original and amended bills in No. 24,084.  As to them we need not pause to inquire whether, under the instrument creating the trust in the Henseys, they were empowered to make such a conveyance as that of May 19, 1906.  Assuming that they were not, the conveyance cannot prejudice the complainants if allowed to stand as to these persons.

The substantial relations of the parties have not been changed.  A court of equity is not called upon to do a vain thing.  This conveyance, in so far as it undertakes to pass the title to Hensey's shares to Landon and Kimberly, may be canceled without affecting the interests of the other parties.

In our opinion the bill should have been sustained, as to Hensey, Landon, and Kimberly, and a decree passed canceling the said conveyance as to Landon and Kimberly, and directing a sale of the Hensey six-tenths interest in the Dry Meadows land in satisfaction of the decree of May 24, 1906, in cause No.

24,084; and dismissing the bill as to Soule, Holmes, Stevens, and Dyer.

The decree will be reversed, with costs to be paid out of the proceeds of the sale hereafter to be made, and the cause remanded, with direction to enter a decree in conformity with this opinion. *Reversed.*

A motion by the appellees, Landon and Kimberly, for a severance and for the allowance of an appeal to the Supreme Court of the United States, was granted February 11, 1910.